Christopher J. Drotzmann, OSB No. 962636
cdrotzmann@davisrothwell.com
Nicholas V. Beyer, OSB No. 193304
nbeyer@davisrothwell.com
**DAVIS ROTHWELL EARLE & XÓCHIHUA P.C.**
**200 S.W. Market Street, Suite 1800**
**Portland, Oregon 97201**
**Tel:  (503) 222-4422**
**Fax: (503) 222-4428**

**Of Attorneys for Defendant Smirk's Ltd**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LUKE WESLEY PEARSON, | Case No. |
| Plaintiff, | DEFENDANT SMIRK'S LTD.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332, 1441, AND 1446 (DIVERSITY OF CITIZENSHIP) |
| v. | |
| DAILY HARVEST, INC., a foreign corporation; SECOND BITE FOODS, INC., d/b/a "STONE GATE FOODS", a foreign corporation; and SMIRK'S LTD, a foreign corporation, | |
| Defendants. | |

Defendant Smirk's Ltd. ("Smirk's"), by and through its undersigned counsel, removes

this action from the Multnomah County Circuit Court of the State of Oregon, where it is

currently pending, to the United States District Court for the District of Oregon, Portland

Page 1  DEFENDANT SMIRK'S LTD.'S NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S.C. §§ 1332, 1441, AND 1446
(DIVERSITY OF
CITIZENSHIP)

Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[1] As addressed below, diversity

jurisdiction exists in this action. See U.S.C. § 1332(a). In support of this removal, Smirk's states

as follows and relies upon the exhibits hereto.

## I.     INTRODUCTION AND BACKGROUND

1.      On or around September 2, 2022, plaintiff Luke Wesley Pearson filed a complaint

(the "Complaint") in Oregon state court, initiating *Pearson v. Daily Harvest Inc*., State of

Oregon, Multnomah County Circuit Court, Case No. 22CV21637 (the "State Court Action").

True copies of all pleadings filed in the State Court Action are attached hereto as "Exhibit A."

Based upon information and belief, no other pleadings have been filed in the State Court Action.

2.      In the Complaint, Plaintiff alleges that he is entitled to $5,100,000 in damages for

personal injury, breach of warranty, misrepresentation, and violation of Oregon's Unlawful

Trade Practices Act (UTPA). *See* Ex. A, ¶¶ 50-116; p. 75-76 (Amended Compl., Prayer).

3.      As more fully explained below, this case is properly removed to this Court under

28 U.S.C. § 1441 because: (1) Allied has satisfied the procedural requirements for removal; and

(2) this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332 and 1441.

## II.    DEFENDANT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

4.      Removal is timely pursuant to 28 U.S.C. § 1446(b) because less than thirty (30)

days have passed since Plaintiff attempted service on Smirk's.[2]

---

[1] By this removal, Smirk's reserves all rights, including, but not limited to, defenses and objections as to venue, personal and/or subject-matter jurisdiction, and service of process, and this removal is subject to, and without waiver of, any such defenses and objections.
[2] Based on information and belief, Plaintiff attempted service on Smirk's on or around September 27, 2022.

5.      Pursuant to 28 U.S.C. § 117 and LR 3-2(a)(1), the United States District Court for the District of Oregon, Portland Division, is the federal judicial district and division embracing the Multnomah County Circuit Court of the State of Oregon, where this lawsuit was originally filed. Venue is thus proper because this is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

6.      As required by 28 U.S.C. § 1441(a), Smirk's is providing a copy of all process, pleadings, and orders served upon it, including the summons and complaint, which are attached hereto as "Exhibit A."

7.      All other defendants that have been joined and served in this action have consented to removal as required under 28 U.S.C. § 1446(b)(2)(A).

8.      As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being promptly served upon Plaintiff's counsel and a copy is being filed with the Clerk of the Multnomah County Circuit Court of the State of Oregon. A true and correct copy of "Defendant Smirk's Ltd.'s Notice to State Court of Removal of Action Under 28 U.S.C. §§ 1332, 1441, and 1446 (Diversity of Citizenship)" filed in the Multnomah County Circuit Court of the State of Oregon is attached hereto as "Exhibit B."

III.    **REMOVAL IS PROPER BECAUSE THE COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 28 U.S.C. §§ 1332 AND 1441.**

9.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds $75,000, exclusive of costs and interest, and is between citizens of different states.

A.      **Complete Diversity of Citizenship Exists Between the Parties.**

DEFENDANT SMIRK'S LTD.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332, 1441, AND 1446 (DIVERSITY OF CITIZENSHIP)

DAVIS ROTHWELL
EARLE & XÓCHIHUA P.C.
200 SW MARKET ST, SUITE 1800
PORTLAND, OREGON  97201
T (503) 222-4422   F (503) 222-4428

10.    Upon information and belief, Plaintiff Luke Wesley Pearson is and, at the time of the filing of this action, was an individual citizen of the state of Oregon. *See* Ex. A, p. 40, ¶ 3 (Amended Compl., Parties).

11.    Defendant Smirk Ltd. is and, at the time of the filing of the action, was a limited liability company organized and existing under the laws of the State of Colorado. *See* Ex. C, *Articles of Organization, Smirk's Ltd.* The members of Smirk's Ltd, are and, at the time of the filing of the action, were three individuals: (1) Nicholas Erker, a resident of Fort Morgan, Colorado and a citizen of the State of Colorado, (2) Donald Edson, a resident of Fort Morgan, Colorado and a citizen of the State of Colorado, and (3) Cynthia Schmid, a resident of Fort Collins, Colorado and a citizen of the State of Colorado.

12.    Defendant Daily Harvest, Inc. is and at the time of the filing of the action, was a corporation organized and existing under the laws of the State of Delaware, and having its principle place of business in New York. *See* Ex. D, *SEC Form D, Daily Harvest, Inc.*

13.    Defendant Second Bite Foods, Inc., d/b/a "Stone Gate Foods" is, and at the time of the filing of the action, was a corporation organized and existing under the laws of the State of Minnesota, and having its principle place of business in Minnesota. See Ex. E, *Articles of Incorporation of Second Bite Foods, Inc.*

14.    Accordingly, this action involves "citizens of different States." 287 U.S.C. § 1332(a)(1). Because Plaintiff is an Oregon citizen and no defendant properly joined and served is a citizen of the State of Oregon, removal of this action is proper under 28 U.S.C. § 1441(b).

**B.    The Amount-In-Controversy Requirement is Satisfied.**

15.    The amount-in-controversy requirement of 28 U.S.C. § 1332(a) is satisfied when it is facially apparent from the initial pleading that the jurisdictional threshold is met. See 28

DAVIS ROTHWELL EARLE & XÓCHIHUA P.C. 200 SW MARKET ST, SUITE 1800 PORTLAND, OREGON 97201 T (503) 222-4422   F (503) 222-4428

U.S.C. § 1446(c)(2) ("[i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a)… the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy.")

16.    In this case, it is clear from Plaintiff's Complaint that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Plaintiff seeks $5,100,000. *See* Ex. A, p. 75-76 (Amended Compl., Prayer).

WHEREFORE, defendant Smirk's Ltd. hereby removes this action from the Multnomah County Circuit Court of the State of Oregon to the United States District Court for the District of Oregon, Portland Division.

DATED this 17th day of October, 2022.

DAVIS ROTHWELL
EARLE & XÓCHIHUA P.C.

_____
Christopher J. Drotzmann, OSB No. 962636
cdrotzmann@davisrothwell.com
Nicholas V. Beyer, OSB No. 193304
nbeyer@davisrothwell.com
Of Attorneys for Defendant Smirk's Ltd

DEFENDANT SMIRK'S LTD.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332, 1441, AND 1446 (DIVERSITY OF CITIZENSHIP)

DAVIS ROTHWELL
EARLE & XÓCHIHUA P.C.
200 SW MARKET ST, SUITE 1800
PORTLAND, OREGON 97201
T (503) 222-4422    F (503) 222-4428

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANT SMIRK'S LTD.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332, 1441, AND 1446 (DIVERSITY OF CITIZENSHIP) on the following attorney(s) of record:

| |
|---|
| Mr. Jeffrey A. Bowersox, OSB No. 814422<br>Bowersox Law Firm, P.C.<br>385 1st Street, Suite 215<br>Lake Oswego, OR 97034<br>Telephone:  503/452-5858<br>Facsimile:  503/345-6893<br>Email:  Jeffrey@bowersoxlaw.com<br>       *Of Attorneys for Plaintiff* |

by mailing to the foregoing a true copy thereof, placed in a sealed envelope, with postage prepaid, addressed as listed above, and depositing the same in the United States mail through a post office at Portland, Oregon, on this day.

DATED this 17th day of October, 2022.

DAVIS ROTHWELL
EARLE & XÓCHIHUA P.C.

_____
Christopher J. Drotzmann, OSB No. 962636
cdrotzmann@davisrothwell.com
Nicholas V. Beyer, OSB No. 193304
nbeyer@davisrothwell.com
Of Attorneys for Defendant Smirk's Ltd

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | | |
|---|---|---|
| LUKE WESLEY PEARSON, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | |
| v. | ) | Personal Injuries – Product Liability; |
| | ) | Negligence;Adulterated Food Product; |
| DAILY HARVEST, INC.,a Delaware | ) | Breach of Warranties; Misrepresentation; |
| Corporation, | ) | Unlawful Trade Practice |
| | ) | |
| Defendant. | ) | (NOT SUBJECT TO MANDATORY |
| | ) | ARBITRATION) |
| | ) | |
| | ) | (Demand for Jury Trial) |
| | ) | |
| | ) | Fee Authority: ORS 21.160(1)(d) |
| | ) | Amount in Controversy: $5,100,000 |

Plaintiff alleges:

## **INTRODUCTION**

1.

This lawsuit arises from the sale and other distribution for value by Daily Harvest, Inc. ("Daily Harvest") of its French Lentil + Leeks Crumbles ("Lentil Crumbles") food product that poisoned plaintiff and likely hundreds more people. Prior to the time that plaintiff ate Lentil Crumbles, he was healthy, physically and emotionally strong with no significant health problems. After consuming the Daily Harvest Lentil Crumbles, plaintiff became violently ill, required hospitalization and endured the surgical removal of his gallbladder. Plaintiff has been seriously and permanently injured by Daily Harvest's adulterated, contaminated and dangerously defective Lentil Crumbles food product.

**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 1 of 78

1

2.

2

3    Daily Harvest marketed and represented that its Lentil Crumbles were a safe and wholesome

4    food product made with mostly organic and vegan ingredients that would promote health and well-

5    being in the consumer. Instead, the product was adulterated and contaminated with an unknown

6    biological pathogen, chemical or toxin that has caused plaintiff and hundreds of other consumers to

7    report symptoms of violent illness, liver injury and elevated liver enzymes, and even, as in plaintiff's

8    case, requiring some people to be hospitalized and have gallbladder removal surgery in an attempt

9    to restore their health and protect them from further injury or disease.

10                                           **<u>PARTIES</u>**

11                                              3.

12

13    Plaintiff Luke Wesley Pearson is a citizen of Oregon and a resident of Multnomah County.

14    Plaintiff Pearson is a social media influencer with over 125,000 followers on Instagram and other

15    social media sites. Daily Harvest specifically sought out plaintiff and provided Lentil Crumbles to

16    plaintiff for the purpose of encouraging plaintiff to consume the Lentil Crumbles and to influence

17    his followers by posting about the taste, quality and desirability of Lentil Crumbles.

18                                              4.

19

20    Daily Harvest is a privately owned, subscription-based food delivery service that offers

21    frozen, vegan meals through delivery directly to customers on a weekly or monthly subscription

22    basis. Founded in 2015, Daily Harvest is incorporated in Delaware[1] with its principal corporate

23    offices in New York[2]. Daily Harvest's corporate offices are located at 99 Hudson Street, 11th Floor,

24

25

26

---

[1] https://sec.report/CIK/0001667362
[2] https://pitchbook.com/profiles/company/85706-92#overview

Page 2 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;
Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 2 of 78

1  New York, NY 10013. The company has over 300 employees[3] and is backed by dozens of investors

2  including notable celebrities such as Serena Williams, Blake Griffin, Gwyneth Paltrow, and Bobby

3  Flay[4], as well as several large investment firms including VMG Partners, Lone Pine Capital, and

4  Lightspeed Venture Partners[5]. In November 2021, Daily Harvest conducted a round of funding that

5  raised roughly $77 million and vaulted the company to "unicorn" status, with a valuation of $1.1

6  billion dollars[6]. The company's revenue in 2020 was an estimated $250 million[7].

7

8                                         5.

9         Daily Harvest markets its meal subscriptions to busy people who are short on time to prepare

10  meals but who value a balanced diet composed of foods that are minimally processed and

11  sustainably, ethically, and organically sourced. According to its website, the company partners with

12  farmers who are transitioning to organic and sustainable farming practices[8]. Daily Harvest offers

13  more than 80 meal options in their subscriptions that are vegan, fruit- and vegetable-focused, GMO-

14  free, and gluten-free[9]. Food items include smoothies, vegetable and grain bowls, flatbreads, nut-

15  based beverages, and other vegan meal and snack options such as plant-based protein "crumbles."

16  Each frozen food item in a subscription box costs between $5.99 and $11.99, with options for

17  customers to have their meals delivered to 95% of locations within the continental US on a weekly

18

19

20

---

[3] https://pitchbook.com/profiles/company/85706-92#signals
[4] https://www.foxbusiness.com/markets/daily-harvest-ceo-rachel-drori
[5] https://www.bloomberg.com/news/articles/2021-11-15/daily-harvest-nabs-1-1-billion-valuation-as-lone-pine-invests
[6] https://www.bloomberg.com/news/articles/2021-11-15/daily-harvest-nabs-1-1-billion-valuation-as-lone-pine-invests
[7] https://www.digitalcommerce360.com/2021/11/15/startup-daily-harvest-reaches-unicorn-status-with-1-1-billion-valuation/
[8] https://www.daily-harvest.com/about?utm_source=google&utm_medium=cpc&g_net=g&utm_campaign=Google_Brand_Daily-Harvest_General&utm_content=Google_Brand_Daily-Harvest_Brand-Name_E&utm_term=daily%20harvest&matchtype=e&creative_id=406198775018&gclid=Cj0KCQjwntCVBhDdARIsAMEwACkM4aMn_8PwVHmoyveBsKEcmYWk94kRqlJ8qieM5VzmFeFpVfDWCgkaAvJiEALw_wcB
[9] https://help.dailyharvest.com/en_us/categories/our-food-HkedZ7CqN

Page 3 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties; Misrepresentation; Unlawful Trade Practice

BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

1    or monthly basis[10]. Food items are delivered frozen and arrive in cardboard boxes packed with dry

2    ice.

3                                                6.

4

5         In January 2022, Daily Harvest announced a multi-year partnership with American Farmland

6    Trust and California Certified Organic Farmers to help farmers in the United States who are

7    historically underrepresented in the industry develop sustainable, organic farming practices in the

8    United States[11]. According to the company's website, this partnership offers technical resources,

9    financial assistance, and market access in order to help farmers transition to organic and regenerative

10   agricultural practices[12].

11                                               7.

12

13        The company is led by founder and CEO Rachel Drori, with other officers including CFO

14   Matthew Weiler, Chief Supply Chain Officer Ricky Silver, VP of People Operations Jolie Loeble,

15   and Executive Vanessa Moore. Board members include Alex Taussig of Lightspeed Venture

16   Partners, Carle Stenmark of VMG Partners, CEO and Founder Rachel Drori, Mary Dillon, and Sally

17   Robling. The company has a patent pending for Methods and Compositions for Plant-Based

18   Breakfast Bowls.[13]

19   // // // //

20

21

22

23

24   _____

25   [10] https://help.dailyharvest.com/en_us/categories/our-plans-HybdbXRqV
     [11] https://www.prnewswire.com/news-releases/daily-harvest-announces-partnership-with-american-farmland-trust-
           and-california-certified-organic-farmers-to-increase-organic-regenerative-farming-301461459.html
26   [12] https://www.daily-harvest.com/content/sustainability-partnership-announcement
     [13] https://pitchbook.com/profiles/company/85706-92#board

Page 4 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;
Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 4 of 78

1    **GENERAL ALLEGATIONS AND BACKGROUND**

2                                        8.

3        To sell the company's products, the founders, promoters, officers, executives, and Board
4
5    Members of Daily Harvest determined that they would widely promote the company's products,
6    including through the use of social media influencers. Daily Harvest's goal was to widely broadcast,
7    to a large population of each of its planned demographics, that its products were pure, wholesome,
8    safe, healthy, nutritious, vegan and organic.

9                                        9.

10       Daily Harvest intended to make, and did make, representations to consumers, including
11   plaintiff that it had well-developed, safe, organic supply chains in place and that it used good
12   manufacturing practices (GMP) to produce and safely deliver healthy and nutritious food products
13
14   to consumers that were safe for human consumption, and specifically that that its products were
15   merchantable and fit for the specific use of its customers, being made with only unadulterated,
16   contaminate-free ingredients.

17                                       10.

18       In fact, on information and belief, Daily Harvest did not maintain GMP nor did it adequately
19   test and certify that all of its products, specifically including its Lentil Crumbles product were
20   healthy, nutritious, free of contamination by biological pathogens, toxins, or chemical contaminants,
21   and that Lentil Crumbles were not adulterated within the meaning of the federal Food, Drug and
22
23   Cosmetic Act and/or Oregon law governing food safety and/or did not violate Oregon's Unlawful
24   Trade Practices Act.

25

26

Page 5 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties; Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com
Exhibit A, Page 5 of 78

1

11.

2

3      Daily Harvest's Lentil Crumbles product became adulterated and contaminated with an

4    unknown biological pathogen, chemical or toxin that caused consumers, including plaintiff to

5    become violently ill.

6                                          12.

7      Instead of immediately and urgently warning purchasers and consumers of its product of the

8    potential danger to their physical and emotional health that would occur from eating the

9    contaminated Lentil Crumbles, Daily Harvest instead went into a "product reputation protection

10   mode" and minimized the concerns of injured consumers who notified the company of their illness

11   after eating the Lentil Crumbles.

12

13                                          13.

14     Specifically, Daily Harvest, as a direct-to-consumer food product seller, had all the necessary

15   information that would be required for it to immediately contact all persons to whom its Lentil

16   Crumbles had been delivered and warn them by a clear, unequivocal and urgent message that the

17   Lentil Crumbles were not safe to eat, and that Lentil Crumbles were causing large numbers of

18   consumers of the product to experience severe abdominal pain, elevated liver enzymes and bilirubin

19   levels, jaundice and other symptoms that would appear to a reasonable physician to be signs of

20   gallbladder and/or liver injury requiring prompt surgical removal of the patient's gallbladder.

21

22                                          14.

23     By using all of the most immediately available methods, that is, text message and/or email,

24   as well as prominent warnings and notifications on its website, Daily Harvest could have easily

25   informed its customers and other Lentil Crumbles consumers of the risk of injury from consuming

26

Page 6 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;
Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 6 of 78

1  its Lentil Crumbles; warning consumers not to eat the product; and describing symptomology
2  reported by consumers who had eaten Lentil Crumbles.
3                                              15.
4
5      Instead, Daily Harvest issued vaguely worded and insufficient warnings to its customers and
6  influencers, including plaintiff, to whom Daily Harvest had sold and/or provided promotional
7  products. Daily Harvest failed to use its many resources to properly and urgently warn consumers
8  of its product that they were in potential danger from eating Lentil Crumbles.
9                                              16.
10
11     To the date of filing of this complaint, Daily Harvest still has failed to give direct, urgent
12 warning to consumers of its Lentil Crumbles that the product should not be eaten, and full
13 description of symptomology reported by injured consumers, and instructing that the product should
14 be saved for testing. Instead, notifications related to Daily Harvest's Lentil Crumbles and the
15 contamination of that product is posted on its website with a requirement to "click through" to find
16 further information.[14] No prominent banner warning is on defendant's website, no direct text
17 messages with a specific an urgent warning and no clear, definitive warning by email has been given
18 to its customers and others to whom it has delivered the Lentil Crumbles, including plaintiff, that
19 the Lentil Crumbles should not be eaten; describing symptoms of the illness caused by the product,
20 and instructing that the product should be saved for testing.
21
22                                             17.
23     Instead, Daily Harvest has stated through its CEO that it is "frustrated", that it has found no
24 evidence of any contamination in its Lentil Crumbles. Daily Harvest's CEO's latest pronouncement
25
26

---

[14] Exhibit A, attached to this Complaint

Page 7 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties; Misrepresentation; Unlawful Trade Practice

BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

1    is that the only product that is causing any symptoms is Lentil Crumbles. The company's website

2    click-thru information states:

3        "We are confident this issue is limited to our French Lentil + Leek Crumbles and
4        does not impact any of our other 100+ menu items. **We are still eating and feeding
         our families all of our other products and they are safe for you to do the same.**"
5        (emphasis added)[15]

6                                        18.

7        On information and belief, multiple other products sold by Daily Harvest have resulted in
8
9    consumer complaints of illness and symptoms essentially identical to the illness and symptoms

10   reported to be caused by consumption of Lentil Crumbles. These consumer-reported symptoms

11   include liver enzyme elevation, jaundice, abdominal pain, and fatigue. The additional Daily Harvest

12   products reportedly causing such symptoms include certain smoothies, certain flatbreads and the

13   Sweet Potato + Wild Rice Hash bowl products.

14                                       19.

15       Daily Harvest has reported that it instituted a "voluntary recall" of all units of its Lentil
16
17   Crumbles produced between April 28 and June 17, 2022. Daily Harvest reports that it has now

18   recalled all lots of its Lentil Crumbles that were produced.

19                                       20.

20       Approximately 500 consumers have reported illness or adverse reactions after consuming

21   Lentil Crumbles.

22                                       21.

23       According to Daily Harvest nearly 30,000 units of the product were distributed throughout
24
25   the US by direct online sales, retail sales at pop-up stores in Chicago and Los Angeles. Social media

26

[15] Exhibit B to Complaint

Page 8 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;
Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 8 of 78

influencers and other media personnel were also provided samples of Lentil Crumbles by Daily Harvest.

22.

Daily Harvest's Lentil Crumbles was packaged in a 12 oz. sealed bag, and was distributed frozen as a premade re-heatable product. The package contained the Daily Harvest logo at the top, "CRUMBLES" below the logo, and "French Lentil+ Leek" also printed on the label in bold type.

23.

Moreover, the company has actively encouraged the destruction of evidence in this case by informing all persons who contacted the company with concerns about Lentil Crumbles that they should dispose of or otherwise destroy the product. Daily Harvest has also advised destruction of the product in its email communications to consumers and through its website click-thru product updates. This action by the company is an intentional attempt to destroy evidence that could provide valuable information to physicians and customers who have been sickened by eating Lentil Crumbles. Testing of the affected product is important to understanding what specific pathogen and/or chemical or toxin is contained in the contaminated products and also to help determine the amount of any such contamination in the product.

**FIRST CLAIM FOR RELIEF – PERSONAL INJURY**
**COUNT ONE**
**(Strict Products Liability)**

24.

Plaintiff realleges paragraphs 1 through 23, above as though fully set forth herein.

25.

Defendant Daily Harvest sold or otherwise provided for value Lentil Crumbles to plaintiff.

Page 9 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties; Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 9 of 78

26.

The Lentil Crumbles were an adulterated food within the meaning of the federal Food, Drug and Cosmetics Act, 21 U.S.C.A. § 342, and under Oregon state law, ORS § 616.235, when introduced into interstate commerce and when sold and delivered to plaintiff, in that the Lentil Crumbles bore or contained a poisonous or deleterious substance that rendered them injurious to health.

27.

Defendant Daily Harvest introduced the Lentil Crumbles, an adulterated food, into interstate commerce in violation of the Food, Drug, and Cosmetics Act, 21 U.S.C.A. § 331.

28.

Defendant Daily Harvest sold and delivered for value to Plaintiff the Lentil Crumbles, an adulterated food, in violation of ORS § 616.215.

29.

Defendant Daily Harvest offered for consumption the Lentil Crumbles, an adulterated food, in violation of § 3-101.11 of the 2009 Federal Food Code, adopted by the Oregon Public Health Division Foodborne Illness Prevention Program under Oregon's Food Sanitation Rules.

30.

Defendant Daily Harvest failed to employ appropriate quality control operations to ensure that the Lentil Crumbles were suitable for human consumption in violation of 21 C.F.R. § 110.80.

31.

Defendant Daily Harvest's Lentil Crumbles product was in a defective condition that was unreasonably dangerous to the ultimate user, plaintiff Luke Pearson, at the time the product left the

Page 10 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 10 of 78

hands of defendant, and the Lentil Crumbles product was intended to, and did in fact, reach plaintiff without substantial change in its condition.

32.

At the time plaintiff received defendant's Lentil Crumbles product it was in a condition that was not contemplated by the plaintiff Pearson, and he did not reasonably expect that the Lentil Crumbles were adulterated and were unreasonably dangerous to his health and well-being.

33.

Defendant Daily Harvest's Lentil Crumbles product was in a defective condition because of a flaw arising from the manufacturing process or delivery of the product or another, currently indeterminate defect that caused Lentil Crumbles to be adulterated and unfit for human consumption.

34.

Following delivery of the Lentil Crumbles to plaintiff and his consumption of Lentil Crumbles, plaintiff experienced personal injury as more fully described below.

35.

On **May 29, 2022**, plaintiff first cooked and ate Lentil Crumbles on flatbread. Plaintiff made video content to include in a daily vlog but never posted the video because soon after eating the products, plaintiff became ill, including significant stomach pain that could not be relieved by positioning and/or using over-the-counter products including Gas-X. Plaintiff was unable to get comfortable or get pain relief, but eventually fell asleep from exhaustion. Plaintiff woke up in pain multiple times during the night. Plaintiff felt relief the next morning.

Page 11 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 11 of 78

1
36.

2
Approximately a week later, on **June 6, 2022**, at approximately 10:00PM, plaintiff prepared

3
another meal of Lentil Crumbles on another flatbread that was provided to plaintiff by defendant

4
Daily Harvest. Within an hour after eating the Lentil Crumbles, plaintiff again experienced

5
abdominal pain, this time accompanied by a low-grade fever and chills. Plaintiff took a Covid test

6
that was negative. Plaintiff and his partner were scheduled to travel to Mexico on a 6:00AM flight

7
from Portland and plaintiff was concerned about whether he could travel because of his illness.

8

9
37.

10
On June **7, 2022**, at about 3:00AM plaintiff and his partner woke up to see what his condition

11
was and to determine whether they could travel to Mexico as planned. Plaintiff still had a fever and

12
chills and now a headache. Plaintiff and his partner cancelled their trip because he was so sick.

13
Plaintiff tested negative again for Covid.

14

15
38.

16
On **June 8, 2022**, Plaintiff's symptoms worsened. While sleeping, he suddenly woke up

17
having severe bilateral low back pain described as "the worst of my life. It felt like I had thrown my

18
back out but I hadn't done anything to physically hurt myself. I couldn't even roll my body over in

19
the bed or sit up on my own." Plaintiff's partner had to help him sit up and stand up because the

20
pain was so bad it took his breath away and the chills shaking his body made the pain worse. Because

21
this was the sickest plaintiff had felt in many years, he decided he needed medical care. Plaintiff

22
was thereafter given blood and urine tests and it was determined that plaintiff had a high bilirubin

23
level and very elevated liver enzymes. It was determined that plaintiff did not have a urinary tract

24
infection or kidney stones. Plaintiff's PCR Covid test administered at the physician's office returned

25

26
negative. Plaintiff's physician did not know what was wrong but sent plaintiff home with

Page 12 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 12 of 78

1  instructions to call the physician or go to a hospital Emergency Department if his condition
2  deteriorated.

3                                    39.

4
5      On **June 9, 2022**, Plaintiff was still in significant pain with fever and chills. As instructed
6  plaintiff called his physician's office. Plaintiff's physician expressed concern about plaintiff's
7  elevated liver enzymes and ordered a CT scan of his abdomen and pelvis for that same day. Plaintiff
8  was also tested for hepatitis. All hepatitis tests came back negative. Later that night plaintiff noticed
9  some yellowing of his eyes and skin.

10                                   40.

11
12     On **June 10, 2022**, Plaintiff again called his doctor to discuss next steps for treatment and to
13  report his jaundice.  Plaintiff's physician directed him to the Emergency Department of Oregon
14  Health and Sciences University Hospital ("OHSU") and called ahead to alert the emergency
15  department that plaintiff would be arriving. Plaintiff thereafter checked into the emergency
16  department and more blood tests were performed. The physician also ordered an MRCP test to
17  visualize plaintiff's gallbladder and liver. Plaintiff remained in the emergency department for 26
18  hours before being admitted to the general ward of the OHSU hospital.

19                                   41.

20
21     Early in the morning of **June 11, 2022**, plaintiff was advised by physicians to have his
22  gallbladder removed because the doctors believed a gallstone might have blocked a biliary duct at
23  some point thereby causing his liver enzymes to spike. The physicians believed plaintiff's body had
24  naturally passed the suspected stone. But, in order to prevent another incident of the same type with
25  resultant further liver insult, plaintiff was advised to undergo gallbladder removal surgery, medically
26  known as "cholecystectomy." Plaintiff was put on stand-by or the "add on" list for surgery. Plaintiff

Page 13 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 13 of 78

1    was informed late in the afternoon that there was no operating room available that day and his

2    surgery would instead occur the next morning at 7:30AM.

3                                                42.

4    

5          On **June 12, 2022**, plaintiff's gallbladder was surgically removed as had been prescribed by

6    his physicians. Plaintiff remained in the hospital overnight for observation to determine if his liver

7    enzyme levels were trending downward.

8                                                43.

9          On **June 13, 2022**, plaintiff was discharged from the hospital and his liver enzymes and

10   bilirubin were improving.

11                                               44.

12   

13         Five days later, on **June 18, 2022**, plaintiff saw Abby Silberman's TikTok video describing

14   her experience after eating defendant Daily Harvest's Lentil Crumbles. Silverman reported she had

15   terrible stomach pain and elevated liver enzymes and was hospitalized. At that point plaintiff made

16   the correlation that he, like Ms. Silverman, received a promotional package from defendant Daily

17   Harvest with the same Lentil Crumbles and flatbreads, and after eating the Lentil Crumbles she

18   developed these same symptoms plaintiff had.

19                                               45.

20   

21         On **June 19, 2022**, between 8:30 and 9:30AM Pacific Time plaintiff posted a video telling

22   of this realization and correlation on TikTok and Instagram. At 11:07AM plaintiff received a mass

23   email from defendant Daily Harvest instructing consumers to destroy any Lentil Crumbles they may

24   have and stating that Daily Harvest was "actively looking into this."

25   

26   

Page 14 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 14 of 78

46.

If defendant Daily Harvest had taken immediate action to directly notify everyone to whom it had delivered its Lentil Crumbles, including plaintiff, and had given a fair and accurate description of symptoms that consumers had experienced after eating the product, plaintiff would have been able to report this fact to his physicians and he would not have undergone the surgical procedure to remove his gallbladder.

47.

Plaintiff remains permanently injured as a result of the removal of his gallbladder and is subject to future susceptibility of disease, most especially nonalcoholic fatty liver disease ("NAFLD"). Nonalcoholic fatty liver disease is associated with having undergone cholecystectomy. In 2013 the *American Journal of Gastroenterology* reported a study indicating that NAFLD incidence was significantly greater among cholecystectomy recipients (48.4%) than in nonrecipients with (34.4%) or without gallstones (17.9%), after adjusting for age and sex ($P<.01$ for all comparisons). Multivariate analysis indicated a significant association between NAFLD and cholecystectomy (OR=2.43; 95% CI, 1.81-3.28), while no association was observed between NAFLD and gallstones (OR=1.09; 95% CI, 0.84-1.42).

48.

Plaintiff has sustained significant personal injury, including but not limited to: severe pain, anxiety and fear, mental aguish of suffering from an illness with an unknown cause at the time he was seeking treatment, disruption of his normal daily living activities, cancellation of personal travel plans, and the inability to perform his livelihood. Plaintiff has incurred past medical expenses and will more probably than not, incur future medical expenses related to his illness caused by defendant Daily Harvest's adulterated Lentil Crumbles food product.

Page 15 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 15 of 78

49.

Judgment should be entered in plaintiff's favor against defendant Daily Harvest in an amount determined by the jury to fully and completely compensate plaintiff for his past and future noneconomic damages as instructed by the court, in an amount not to exceed $5,000,000. Plaintiff reserves the right to amend his claim for noneconomic damages to conform to the evidence presented at trial.

50.

Judgment should be entered in plaintiff's favor against defendant Daily Harvest in an amount determined by the jury to fully and completely compensate plaintiff for his past and future economic damages as instructed by the court, in an amount not to exceed $100,000. Plaintiff reserves the right to amend his claim for economic damages to conform to the evidence presented at trial.

**FIRST CLAIM FOR RELIEF – PERSONAL INJURY**
**COUNT TWO**
**(Negligence)**

51.

Plaintiff realleges paragraphs 1 through 50 above as though fully set forth herein.

52.

On information and belief, Defendant Daily Harvest was negligent in one or more of the following ways that foreseeably created an unreasonable risk of harm to consumers of its Lentil Crumbles product, including plaintiff:

a. It did not adequately monitor its food supply chain in a manner that would discover adulteration of its products by ingredients obtained from one or more of its suppliers and take action to prevent the delivery of adulterated Lentil Crumbles from being delivered to consumers;

b. It did not use Good Manufacturing Processes to prevent the introduction of toxins or other forms of contamination to become introduced into its Lentil Crumbles and

Page 16 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com
Exhibit A, Page 16 of 78

1    thereafter to prevent the delivery of adulterated Lentil Crumbles from being delivered to
2    consumers; and
    c.  It did not implement adequate quality control to discover adulteration of Lentil Crumbles
3    and to thereafter prevent the delivery of adulterated Lentil Crumbles to consumers.

4    53.

5    As a direct and reasonably foreseeable result of defendant Daily Harvest's negligence

6    plaintiff was exposed to an unreasonable risk of harm and plaintiff sustained injury and damages as

7    alleged in paragraphs 35 through 50 above.

8    **FIRST CLAIM FOR RELIEF – PERSONAL INJURY**
9    **COUNT THREE**
10   **(Negligence *per se* and/or Violation of Statutory Duty)**

11   54.

12   Plaintiff realleges paragraphs 1 through 53, above as though fully set forth herein.

13   55.

14   Defendant Daily Harvest's violation of the safety statutes, codes, and regulations alleged in

15   paragraphs 26 through 30, above constitute negligence *per se* and/or statutory negligence on the part

16   of defendant.

17

18   56.

19   Plaintiff is a member of the class of persons intended to be protected by the statutes, codes

20   and/or regulations alleged above, in that he is a person who consumed food products produced and

21   distributed by defendant Daily Harvest.

22   57.

23   As a direct and reasonably foreseeable result of defendant Daily Harvest's violation of the

24   statutes, codes and/or regulations alleged above, plaintiff sustained injury and damages as alleged

25   in paragraphs 35 through 50 above.

26

**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

1

## SECOND CLAIM FOR RELIEF – BREACH OF WARRANTY
## COUNT ONE
### (Breach of Express Warranty)
### (ORS 72.3130)

2

3

4

58.

5

Plaintiff realleges paragraphs 1 through 57, above as though fully set forth herein.

6

59.

7

8

Defendant Daily Harvest expressly warranted that its food products, specifically including

9

Lentil Crumbles, that it provided to consumers, including plaintiff Luke Pearson, were wholesome

10

and healthy, nutritious, vegan, organic, safe for human consumption and not adulterated.

11

Defendant's affirmations and warranty of its products safety and quality were made on its website

12

and in other promotional materials.

13

60.

14

15

Defendant's factual affirmations and warranty of its product quality and safety were part of

16

the consideration that formed the basis of plaintiff's agreement to accept the Lentil Crumbles from

17

defendant Daily Harvest, and to consume the Lentil Crumbles for the purpose of evaluating the

18

desirability of the Lentil Crumbles.

19

61.

20

In fact, defendant's Lentil Crumbles were adulterated when received by plaintiff in breach

21

of defendant's express warranty.

22

62.

23

24

As a result of defendant's breach of warranty, (which warranty plaintiff reasonably relied

25

upon in consuming the Lentil Crumbles) plaintiff sustained the personal injuries, including removal

26

of his gallbladder, and other damages described in paragraphs 35 through 50, above.

Page 18 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

63.

Plaintiff gave notice to defendant Daily Harvest of it breach of express warranty by informing defendant that he was sickened after consuming its adulterated product.

**SECOND CLAIM FOR RELIEF**
**COUNT TWO**
**(Breach of Implied Warranty of Merchantability)**
**(ORS 72.3140)**

64.

Plaintiff realleges paragraphs 1 through 63, above as though fully set forth herein.

65.

Defendant Daily Harvest produces and sells and routinely deals in food production and sales and is in the business of so doing. It is a merchant of food products as defined under the Uniform Commercial Code ("UCC") and has the obligations of a merchant under the UCC.

66.

Defendant Daily Harvest's delivery for value of food products consumed off its premises constitutes a "sale" pursuant to ORS 72.3140. Defendant Daily Harvest sold the Lentil Crumbles to plaintiff under the terms of the UCC, plaintiff purchased the Lentil Crumbles in reliance on the implied warranty of merchantability and plaintiff is in direct vertical privity with defendant.

67.

On information and belief, the Lentil Crumbles container was inadequate to prevent the product from becoming adulterated in violation of the implied warranty of merchantability inherent in the sale of its product under the UCC.

Page 19 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 19 of 78

1

68.

2

Defendant Daily Harvest's Lentil Crumbles sold to plaintiff breached the implied warranty

3

of merchantability because were in a condition such that the Lentil Crumbles:

4

5

    a.    would not pass without objection in the trade under the contract description;
    b.    were not of fair average quality within the description;

6

    c.    were not fit for the ordinary purposes for which food products are used, that is safe human consumption;

7

    d.    were not adequately contained, packaged and labeled as the agreement may require; and

8

    e.    did not conform to the promises or affirmations of fact made on the container or label.

9

69.

10

11

Plaintiff's use of the product by eating it was reasonable and expected under the parties' sale

12

agreement and plaintiff reasonably relied on the implied warranty of merchantability in accepting

13

and consuming the Lentil Crumbles.

14

70.

15

16

As a direct result of defendant Daily Harvest's breach of the implied warranty of

17

merchantability, plaintiff sustained the personal injuries and damages described in paragraphs 35

18

through 50, above.

19

71.

20

Plaintiff timely notified defendant Daily Harvest of its breach of the implied warranty of

21

merchantability by providing it with notice of his injuries after consumption of the Lentil Crumbles.

22

**SECOND CLAIM FOR RELIEF**
**COUNT TWO**

23

**(Breach of Implied Warranty of Fitness for a Particular Purpose)**

24

**(ORS 72.3150)**

25

72.

26

Plaintiff realleges paragraphs 1 through 71, above as though fully set forth herein.

Page 20 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

1

73.

2

3    Defendant knew that plaintiff's purpose in purchasing Daily Harvest Lentil Crumbles was

to obtain a product that was expected to be wholesome, healthy, unadulterated, and safe and fit for

4

human consumption without causing injury.

5

6    74.

7    Defendant knew that it had superior knowledge of its Lentil Crumbles product's condition

8    as compared to plaintiff and that plaintiff relied on defendant Daily Harvest to provide a safe

9    unadulterated product. Defendant Daily Harvest knew of plaintiff's particular purpose in buying

10   Lentil Crumbles from defendant and that plaintiff reasonably relied on defendant's knowledge of

11   his particular purpose and its provision of a product that would meet that purpose.

12

13   75.

14   Plaintiff is in direct vertical privity with defendant.

15   76.

16   Defendant is a merchant under the UCC and sold its food product to plaintiff for

17   consumption a at place other than defendant's premises.

18

19   77.

20   As a direct result of defendant Daily Harvest's breach of the implied warranty of fitness for

a particular purpose, plaintiff sustained the personal injuries and damages described in paragraphs

21

22   35 through 50, above.

23   78.

24   Plaintiff timely notified defendant Daily Harvest of its breach of the implied warranty of

25   fitness for a particular purpose by providing it with notice of his injuries after consumption of the

26   Lentil Crumbles.

Page 21 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 21 of 78

1

## THIRD CLAIM FOR RELIEF
### (Misrepresentation)

2

3                                    79.

4        Plaintiff realleges paragraphs 1 through 78, above as though fully set forth herein.

5                                    80.

6        Defendant misrepresented the condition and quality of its Lentil Crumbles product when it

7   knew or should have known through reasonable care that its product was adulterated and was not

8   safe for human consumption.

9

10                                   81.

11       Defendant represented that its Lentil Crumbles product was wholesome, healthy and safe to

12  eat when it was not. Defendant knew that plaintiff and other consumers would rely on the

13  representations made by defendant Daily Harvest regarding the supposed quality and

14  wholesomeness, the purity and unadulterated nature of its Lentil Crumbles product.

15                                   82.

16

17       Plaintiff reasonably relied on the representations made by defendant Daily Harvest regarding

18  the supposed purity, wholesomeness and unadulterated quality of its product and therefore

19  consumed the product.

20                                   83.

21       Defendant Daily Harvest concealed its knowledge of the adulteration of its product and the

22  injuries and symptoms of injuries sustained by people who had consumed its Lentil Crumbles

23  product and who had thereafter reported those injuries and symptoms of injuries to Daily Harvest.

24

25

26

Page 22 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

84.

As a direct result of Daily Harvest's misrepresentations of its product quality and its concealment of its knowledge of its Lentil Crumbles product's adulteration, as well as the reports of injuries and symptoms of injuries made to Daily Harvest (or that became known to Daily Harvest) plaintiff sustained the injuries and damages alleged in paragraphs 35 through 50, above.

## FOURTH CLAIM FOR RELIEF
### (Violation of Oregon's Unlawful Trade Practices Act)

85.

Plaintiff realleges paragraphs 1 through 84, above as though fully set forth herein.

86.

Defendant Daily Harvest represented that its Lentil Crumbles product had characteristics, ingredients, uses, benefits, quantities or qualities that the goods do not have, specifically that the goods (Lentil Crumbles) were wholesome, pure unadulterated and safe for human consumption when the Lentil Crumbles were adulterated and unfit for human consumption.

87.

Defendant Daily Harvest represented that its Lentil Crumbles were of a particular standard, quality, or grade, when in fact its Lentil Crumbles were of another. Specifically, Daily Harvest represented that its Lentil Crumbles were wholesome, pure unadulterated and safe for human consumption when the Lentil Crumbles were adulterated and unfit for human consumption.

88.

As a direct result of defendant Daily Harvest's violation of ORS 646.608 (e) and/or (g), plaintiff incurred reasonable and necessary medical bills as alleged in paragraph 50, above,

Page 23 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice

BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

1  constituting an ascertainable loss of money as a result of defendant Daily Harvest's willful use or

2  employment of a method, act or practice declared unlawful by those statutes.

3                                          89.

4

5      Plaintiff therefore brings action against defendant Daily Harvest to recover his actual

6  damages as proven at trial actual damages or statutory damages of $200, whichever is greater,

7  together with plaintiff's reasonable attorney fees and costs as provided by ORS 646.

8  **NOTICE OF INTENT TO SEEK PERMISSION TO PLEAD CLAIMS FOR PUNITIVE
   DAMAGES AGAINST DEFENDANT DAILY HARVEST UNDER PLAINTIFF'S CLAIMS**
9  **FOR STRICT PRODUCTS LIABILITY, NEGLIGENCE, NEGILGENCE *PER SE***
   **AND/OR STATUTORY NEGLIGENCE, MISREPRESENTATION AND VIOLATION OF**
10                 **OREGON'S UNLAWFUL TRADE PRACTICES ACT.**

11                                         90.

12

13     Plaintiff hereby gives notice to defendant Daily Harvest of his intention to move the court

14  for an order allowing plaintiff to plead a claim for punitive damages against defendant Daily

15  Harvest.

16                            **PRAYER FOR RELIEF**

17     WHEREFORE, plaintiff prays for judgment to entered in his favor and against defendant

18  Daily Harvest as follows:

19
       a.  Judgment should be entered in plaintiff's favor against defendant Daily Harvest
20
           in an amount determined by the jury to fully and completely compensate plaintiff
21
           for his past and future noneconomic damages as instructed by the court, in an
22
           amount not to exceed $5,000,000. Plaintiff reserves the right to amend his claim
23
           for noneconomic damages to conform to the evidence presented at trial;
24

25     b.  Judgment should be entered in plaintiff's favor against defendant Daily Harvest
26
           in an amount determined by the jury to fully and completely compensate plaintiff

**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

1     for his past and future economic damages as instructed by the court, in an amount

2     not to exceed $100,000. Plaintiff reserves the right to amend his claim for

3     economic damages to conform to the evidence presented at trial;

4

5     c.  For plaintiff's reasonable attorney fees and costs incurred, pursuant ORS

      646.638;

6

7     d.  For plaintiffs costs and disbursements as allowed by law and/or court rule; and

8     e.  For other relief as the court deems just and equitable.

9

     DATED this 29th day of June, 2022.

10

11                       BOWERSOX LAW FIRM, P.C.

12

13

                       s/ Jeffrey A. Bowersox

14                       Jeffrey A. Bowersox, OSB No. 814422

                       385 1st St., Suite 215

15                       Lake Oswego, OR 97034

                       Telephone: (503) 452-5858

16                       Facsimile: (503) 345-6893

17                       www.BowersoxLaw.com

                       jeffrey@bowersoxlaw.com

18                       Trial Attorney for Plaintiff

19

20

21

22

23

24

25

26

Page 25 – COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 25 of 78

# EXHIBIT A

☰

# DAILY HARVEST

LOG IN

# IMPORTANT INFORMATION ABOUT FRENCH LENTIL + LEEK CRUMBLES

Published June 19, 2022 at 1:45pm ET

Nothing matters more than the health and safety of our customers and we deeply value the trust you put in us and our food every day.

We've received customer reports of French Lentil + Leek Crumbles causing gastrointestinal issues. We took immediate steps to address what we heard from customers, reaching out to every person who received French Lentil + Leek Crumbles, instructing them to dispose of the product and not eat it. We simultaneously launched an investigation with internal and external experts throughout our supply chain and in accordance with regulatory procedures. We will share more information as soon as it's available.

Our mission has always been to take care of food so food can take care of you. That means quality, safety, and transparency are and always will be our top priorities. **If you have any French Lentil + Leek Crumbles, please dispose of them and do not eat them.** If you have questions or concerns, please feel free to email us at hello@daily-harvest.com so we can follow up with you directly.



IMPORTANT CONSUMER INFORMATION ABOUT FRENCH LENTIL + LEEK CRUMBLES

# DAILY HARVEST

LOG IN

Harvest Bowls                           Get $25 Off

Harvest Bakes                           Help & FAQ

Flatbreads                              Gifts

Crumbles                                Corporate Gifting

Soups                                   Instant Delivery

Forager Bowls                           Tastemakers

Scoops

Bites

Lattes                                  Twitter

Mylk                                    Facebook

                                        Instagram

Partnerships                            Pinterest

We're Hiring!

Your email would look just peachy here.



6/25/22, 10:52 PM

Case 3:22-cv-01563-MMC Document 1 Filed 10/17/22 Page 35 of 100
IMPORTANT INFORMATION ABOUT A FOOD RECALL - EMAIL RECALL NOTICE - DAILY HARVEST

# DAILY HARVEST

LOG IN

CAN'T WAIT

By clicking above, you agree to our Terms of Use and Terms of Sale, and consent to our Privacy Policy.

Privacy Policy



Terms of Use

Terms of Sale

Do Not Sell My Personal Information

© 2022 Daily Harvest



# EXHIBIT B

6/28/22, 7:00 PM

Case 3:22-cv-01563-YY    Updates on our voluntary recall of French Lentil + Leek Crumbles    Document 1    Filed 10/17/22    Page 37 of 100

PROMO CODE: WELCOME2022 - GET UP TO $35 OFF YOUR FIRST BOX!

An update on our voluntary recall of French Lentil + Leek Crumbles.Details here

☰                     **DAILY HARVEST**                     LOG IN

# UPDATES ON OUR VOLUNTARY RECALL OF FRENCH LENTIL + LEEK CRUMBLES

Updated as of June 27, 2022 at 3:30PM ET

   

**A message from our Founder and CEO Rachel Drori**

Hi. It's Rachel.

I'm reaching out today to update you on everything that we are doing to get to the root cause of the issues that have been reported with our French Lentil + Leek Crumbles. We are working 24 hours a day, seven days a week on this. You deserve answers.

We have spent the past ten days working with the FDA, state agencies and multiple independent labs, as well as experts in microbiology, food safety and toxicology to conduct testing. These tests cover common food-borne pathogens, toxins, and allergens. Results thus far have all come back negative. At this point, despite consulting with numerous experts, cooperating with FDA's investigation, working with our supply chain, and conducting extensive testing, we have not yet identified a cause. **I also want to reassure you that this issue is limited to our French Lentil + Leek Crumbles and does not involve**

6/28/22, 7:00 PM
Case 3:22-cv-01563-YY    Document 1    Filed 10/17/22    Page 38 of 100
Update on our voluntary recall of French Lentil + Leek Crumbles

**limited to our French Lentil + Leek Crumbles and does not impact any of our other 100+ menu items.**

An update on our voluntary recall of French Lentil + Leek Crumbles.Details here

# DAILY HARVEST

LOG IN

When we initiated our voluntary recall, we immediately began a thorough, top-to-bottom investigation of our manufacturing facilities, food and supply chain:

— The FDA and the state Department of Agriculture have each inspected the facility where the French Lentil + Leek Crumbles were manufactured.

— Testing is being conducted in partnership with ISO 17025 certified 3rd party laboratories on French Lentil + Leek Crumbles as well as the ingredients used in them.

— So far, testing has come back negative for food-borne pathogens including Listeria, E.Coli, Salmonella, Staphylococcus Aureus (Staph), B.Cereus, and Clostridium Species. Testing on major allergens including egg, soy, milk, and gluten have also so far come back negative.

— We initiated testing for a wide range of toxins known as mycotoxins, including aflatoxins. The first round of testing on the most common have come back negative but we continue to cast a wider net to ensure we are not missing anything.

As the investigation has not yet identified a root cause, we are expanding our testing regimen to explore other potential, albeit less common, sources of contamination as well as protein and amino acid profiling.

While some of these tests can be completed within 24-72 hours, many take up to 7 days or more to produce results. We are working as fast as possible to get you the answers that you need and deserve.

**We are confident this issue is limited to our French Lentil + Leek Crumbles and**

An update on our voluntary recall of French Lentil + Leek Crumbles. Details here

# DAILY HARVEST                                                    LOG IN

food safety and quality standards throughout our supply chain. We have a robust best-in-class testing protocol designed to ensure your safety:

— The ingredients that go into our food are rigorously tested prior to preparation, and our manufacturing partners adhere to strict quality, food safety and sanitation guidelines.

— We have a thorough tracing process in place to ensure we can follow our ingredients throughout the supply chain.

— We perform quality control testing on every batch of food we produce to ensure it meets our rigorous standards.

If you purchased French Lentil + Leek Crumbles, you've likely heard from us already a few times in the past week. If you have ordered Crumbles for an upcoming box, it's been removed. We're working to collect as much information as possible to find an answer.

We'll continue to share more information as it becomes available. You can expect to hear from us as soon as we know more.

Thank you,

Rachel

+



6/28/22, 7:00 PM
Case 3:22-cv-01563-YY    Document 1    Filed 10/17/22    Page 40 of 100
Update on our voluntary recall of French Lentil + Leek Crumbles

Published June 23, 2022 at 6:10PM ET

An update on our voluntary recall of French Lentil + Leek Crumbles.Details here

DAILY HARVEST                                    LOG IN

From April 28 to June 17, 2022, approximately 28,000 units of the recalled product
were distributed to consumers in the continental United States through online
sales and direct delivery, as well as through retail sales at the Daily Harvest store
in Chicago, IL and a "pop-up" store in Los Angeles, CA. Samples were also
provided to a small number of consumers. Daily Harvest directly notified by email
those consumers who were shipped the affected product, and other consumers
for whom the company had contact information, and consumers were issued a
credit for the recalled product.

Consumers who may still have the recalled product in their freezers should
immediately dispose of it.

French Lentil + Leek Crumbles is a frozen product packaged in a 12oz white
pouch with the words "Daily Harvest" at the top, a large "CRUMBLES"
immediately below the top and the words "French Lentil + Leek" in bold, as
shown below. All lot codes of the French Lentil + Leek Crumbles are affected.  No
other Daily Harvest products are affected or part of this recall.

To date, the company has received approximately 470 reports of illness or
adverse reactions. Consumer safety is our highest priority, and we have taken
immediate steps to stop production and distribution of the product and conduct
a root cause investigation, which is ongoing.

This recall is being made in cooperation with the U.S. Food and Drug
Administration.  Consumers who have questions or would like to report adverse
reactions should contact Daily Harvest by email at **crumbles-recall@daily-
harvest.com** or by visiting **https://www.daily-harvest.com/content/french-lentil-
leek-crumbles-advisory#** or by calling **1-888-302-0305** 9am – 9pm Eastern Time,
7 days a week.

Exhibit A, Page 34 of 78    EXHIBIT B
4 of 8

+

An update on our voluntary recall of French Lentil + Leek Crumbles.Details here

☰          D A I L Y   H A R V E S T          LOG IN

French Lentil + Leek Crumbles. We are taking this very seriously and doing
everything we can to get to the bottom of this. Your health and well-being are our
top priority.

Here are the steps we are taking:

— As soon as we received reports suggesting a possible link between the French
Lentil + Leek Crumbles and an adverse reaction, we immediately took action
and launched a voluntary recall.

— We have reached out multiple times directly to consumers who received the
product, instructing them to dispose of it and not eat it. **If you have French
Lentil + Leek Crumbles, please dispose of them and do not eat them.** The last
thing we'd want is for anyone else to be impacted.

— In parallel, we launched an investigation to identify the root cause of the health
issues being reported. We're working closely with the FDA and with multiple
independent labs to investigate this. We are working with a group of experts to
help us get to the bottom of this—that includes microbiologists, toxin and
pathogen experts as well as allergists.

— All pathogen and toxicology results have come back negative so far, but we're
continuing to do extensive testing and will keep you updated.

— We are in touch directly with customers who reported adverse reactions and
are collecting data to further the investigation, as well as offering refunds. If
you have been impacted and are not already in touch with our team, please go



here to begin a report or email us at crumbles-recall@daily-harvest.com.

An update on our voluntary recall of French Lentil + Leek Crumbles.Details here

# DAILY HARVEST

LOG IN

as we know more. Please reach out if you have any questions.

+

*Published June 19, 2022 at 1:45PM ET*

Nothing matters more than the health and safety of our customers and we deeply value the trust you put in us and our food every day.

We've received customer reports of French Lentil + Leek Crumbles causing gastrointestinal issues. We took immediate steps to address what we heard from customers, reaching out to every person who received French Lentil + Leek Crumbles, instructing them to dispose of the product and not eat it. We simultaneously launched an investigation with internal and external experts throughout our supply chain and in accordance with regulatory procedures. We will share more information as soon as it's available.

Our mission has always been to take care of food so food can take care of you. That means quality, safety, and transparency are and always will be our top priorities. **If you have any French Lentil + Leek Crumbles, please dispose of them and do not eat them.** If you have questions or concerns, please feel free to email us at hello@daily-harvest.com so we can follow up with you directly.



Exhibit A, Page 36 of 78

Smoothies

The Dish

An update on our voluntary recall of French Lentil + Leek Crumbles. Details here

# DAILY HARVEST

LOG IN

Flatbreads

Gifts

Crumbles

Corporate Gifting

Soups

Instant Delivery

Forager Bowls

Tastemakers

Scoops

Bites

Lattes

Twitter

Mylk

Facebook

Instagram

Partnerships

Pinterest

We're Hiring!

Your email would look just peachy here.



Exhibit A, Page 37 EXHIBIT B

Email Address

An update on our voluntary recall of French Lentil + Leek Crumbles. Details here

# DAILY HARVEST

By clicking above, you agree to our Terms of Use and Terms of Sale, and consent to our Privacy Policy.

Privacy Policy

Terms of Use

Terms of Sale

Do Not Sell My Personal Information



© 2022 Daily Harvest



Exhibit A, Page 38 of 78    EXHIBIT B
8 of 8

1

2

3

4          IN THE CIRCUIT COURT OF THE STATE OF OREGON

5              FOR THE COUNTY OF MULTNOMAH

6   LUKE WESLEY PEARSON,            )   Case No. 22CV21637
                                    )
7            Plaintiff,             )   AMENDED COMPLAINT
                                    )
8                                   )   Personal Injuries – Product Liability;
        v.                          )   Negligence; Adulterated Food Product;
9                                   )   Breach of Warranties; Misrepresentation;
    DAILY HARVEST, INC, a foreign   )   Unlawful Trade Practice
10  Corporation, SECOND BITE FOODS, INC., )
    d/b/a "STONE GATE FOODS", a foreign  )   (NOT SUBJECT TO MANDATORY
11  Corporation; and SMIRK'S LTD, a foreign )   ARBITRATION)
    Corporation,                    )
12                                  )   (Demand for Jury Trial)
            Defendants.             )
13                                  )   Fee Authority: ORS 21.160(1)(d)
                                    )   Amount in Controversy: $5,100,000
14

15      Plaintiff alleges:

## **INTRODUCTION**

16

17                          1.

18      This lawsuit arises from the sale and other distribution for value by Daily Harvest, Inc. (Daily

19  Harvest) of its French Lentil + Leek Crumbles ("Lentil Crumbles") food product, which, on

20  information and belief, was manufactured for Daily Harvest by Second Bite Foods, Inc. d/b/a "Stone

21  Gate Foods" ("Second Bite") and containing, on information and belief, organic tara flour that was

22  supplied to Second Bite and Daily Harvest by Smirk's Ltd. ("Smirk's"). Daily Harvest's Lentil

23  Crumbles poisoned plaintiff and likely hundreds more people. Prior to the time that plaintiff ate

24  Lentil Crumbles, he was healthy, physically and emotionally strong with no significant health

25  problems. After consuming the Daily Harvest Lentil Crumbles, plaintiff became violently ill,

Page 1 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 39 of 78

1    required hospitalization and endured the surgical removal of his gallbladder. Plaintiff has been
2
3    seriously and permanently injured by Daily Harvest's adulterated, contaminated and dangerously
4    defective Lentil Crumbles food product.

5                            2.

6        Daily Harvest marketed and represented that its Lentil Crumbles were a safe and wholesome
7
8    food product made with vegan and primarily organic ingredients that would promote health and
9    well-being in the consumer. Instead, the product was adulterated and contaminated with an unknown
10    biological pathogen, chemical or toxin that has caused plaintiff and hundreds of other consumers to
11    report symptoms of violent illness, liver injury and elevated liver enzymes, and even, as in plaintiff's
12    case, requiring some people to be hospitalized and have gallbladder removal surgery in an attempt
13    to restore their health and protect them from further injury or disease.

14                      **PARTIES**

15                            3.
16
17        Plaintiff Luke Wesley Pearson is a citizen of Oregon and a resident of Multnomah County.
18    Plaintiff Pearson is a social media influencer with approximately 75,000 followers on Instagram and
19    other social media sites. Daily Harvest specifically sought out plaintiff and provided Lentil
20    Crumbles to plaintiff for the purpose of encouraging plaintiff to consume the Lentil Crumbles and
21    to influence his followers by posting about the taste, quality and desirability of Lentil Crumbles.

22                            4.
23
24        Daily Harvest, Inc. is a privately owned, subscription-based food delivery service that offers
25    nutritious, frozen, vegan meals through delivery directly to customers on a weekly or monthly
26

Page 2 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 40 of 78

subscription basis. Founded in 2015, Daily Harvest is incorporated in Delaware[1] with corporate offices in New York.[2] Daily Harvest's corporate offices are located at 99 Hudson Street, 11th Floor, New York, NY 10013. The company has over 300 employees[3] and is backed by dozens of investors including notable celebrities such as Serena Williams, Blake Griffin, Gwyneth Paltrow, and Bobby Flay,[4] as well as several large investment firms including VMG Partners, Lone Pine Capital, and Lightspeed Venture Partners.[5] In November 2021, Daily Harvest conducted a round of funding that raised roughly $77 million and vaulted the company to "unicorn" status, with a valuation of $1.1 billion dollars.[6] The company's revenue in 2020 was an estimated $250 million.[7]

5.

Daily Harvest markets its meal subscriptions to busy people who are short on time to prepare meals but who value a balanced diet composed of foods that are minimally processed and sustainably, ethically, and organically sourced. According to its website, the company partners with farmers who are transitioning to organic and sustainable farming practices.[8] Daily Harvest creates the recipes for offers more than 80 meal options in their subscriptions that are vegan, fruit- and vegetable-focused, GMO-free, and gluten-free.[9] Food items include smoothies, vegetable and grain bowls, flatbreads, nut-based beverages, and other vegan meal and snack options such as plant-based

---

[1] https://sec.report/CIK/0001667362
[2] https://pitchbook.com/profiles/company/85706-92#overview
[3] https://pitchbook.com/profiles/company/85706-92#signals
[4] https://www.foxbusiness.com/markets/daily-harvest-ceo-rachel-drori
[5] https://www.bloomberg.com/news/articles/2021-11-15/daily-harvest-nabs-1-1-billion-valuation-as-lone-pine-invests
[6] https://www.bloomberg.com/news/articles/2021-11-15/daily-harvest-nabs-1-1-billion-valuation-as-lone-pine-invests
[7] https://www.digitalcommerce360.com/2021/11/15/startup-daily-harvest-reaches-unicorn-status-with-1-1-billion-valuation/
[8] https://www.daily-harvest.com/about?utm_source=google&utm_medium=cpc&g_net=g&utm_campaign=Google_Brand_Daily-Harvest_General&utm_content=Google_Brand_Daily-Harvest_Brand-Name_E&utm_term=daily%20harvest&matchtype=e&creative_id=406198775018&gclid=Cj0KCQjwntCVBhDdARIsAMEwACkM4aMn_8PwVHmoyveBsKEcmYWk94kRqlJ8qieM5VzmFeFpVfDWCgkaAvJiEALw_wcB
[9] https://help.dailyharvest.com/en_us/categories/our-food-HkedZ7CqN

BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

1
2
3
4
5
6
7
8

protein "crumbles." Each frozen food item in a subscription box costs between $5.99 and $11.99, with options for customers to have their meals delivered to 95% of locations within the continental US on a weekly or monthly basis.[10] On its website, Daily Harvest represents that each subscription box is packed with enough dry ice "to keep contents frozen for 1-2 days after your scheduled delivery day" and that the amount of dry ice included in packaging is modified according to "regional weather" and "seasonal patterns."[11]

6.

9
10
11
12
13
14
15

In January 2022, Daily Harvest announced a multi-year partnership with American Farmland Trust and California Certified Organic Farmers to help farmers in the United States who are historically underrepresented in the industry develop sustainable, organic farming practices in the United States.[12] According to the company's website, this partnership offers technical resources, financial assistance, and market access in order to help farmers transition to organic and regenerative agricultural practices.[13]

7.

16
17
18
19
20
21
22
23
24

The company is led by founder and CEO Rachel Drori, with other officers including CFO Matthew Weiler, Chief Supply Chain Officer Ricky Silver, VP of People Operations Jolie Loeble, and Executive Vanessa Moore. Board members include Alex Taussig of Lightspeed Venture Partners, Carle Stenmark of VMG Partners, CEO and Founder Rachel Drori, Mary Dillon, and Sally

25
26

[10] https://help.dailyharvest.com/en_us/categories/our-plans-HybdbXRqV
[11] https://help.dailyharvest.com/en_us/categories/our-packaging-SyW_W7Rq4
[12] https://www.prnewswire.com/news-releases/daily-harvest-announces-partnership-with-american-farmland-trust-and-california-certified-organic-farmers-to-increase-organic-regenerative-farming-301461459.html
[13] https://www.daily-harvest.com/content/sustainability-partnership-announcement

Page 4 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice

BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

1  Robling. The company has a patent pending for Methods and Compositions for Plant-Based
2
3  Breakfast Bowls.[14]

4                                        8.

5        Defendant Second Bite Foods, Inc., d/b/a "Stone Gate Foods," is incorporated in the State
6  of Minnesota and owns and operates a manufacturing facility located at 4218 Valley Industrial Blvd.
7  S. in Shakopee, Minnesota.[15]
8
9                                        9.

10       Second Bite manufactures and packages specialty foods for brands across the United
11 States.[16] On information and belief, at this facility, Second Bite manufactured frozen food products
12 for Defendant Daily Harvest, including the French Lentil + Leek Crumbles that were the cause of
13 the Plaintiff's illness and injuries.

14                                       10.

15       Defendant Second Bite does business under its federally registered trademark STONE
16 GATE FOODS. The Minneapolis-based company has manufactured food for "retail, food service,
17 and private label customers" around the country for 41 years.[17] On Stone Gate Foods' website,
18
19 Second Bite markets itself as "the go-to co-packaging facility and private label manufacturer for top
20 brands throughout the United States."[18] and claims to specialize in "ready-to-eat and ready-to-cook
21 frozen food products."[19] The company was created as part of Trudeau Distributing, a retail food
22 distribution company.[20]

23

24  _____
    [14] https://pitchbook.com/profiles/company/85706-92#board
25  [15] https://stonegate-foods.com/about/
    [16] https://stonegate-foods.com/about/
26  [17] https://stonegate-foods.com/
    [18] https://stonegate-foods.com/capabilities/
    [19] https://stonegate-foods.com/capabilities/
    [20] https://www.linkedin.com/company/stone-gate-foods

Page 5 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

1

2

11.

3    On information and belief, Second Bite knew at all times in their manufacturing relationship

4    with Daily Harvest that Daily Harvest was a frozen meal subscription delivery service with

5    customers across the United States.

6    12.

7    Second Bite's 40,000 sq. ft. facility at 4218 Valley Industrial Blvd. S. in Shakopee, MN is

8    Safe Quality Food (SQF) Level 2 certified, Hazard Analysis and Critical Control Point (HAACP)

9    certified, and USDA-, FDA-, and Minnesota Department of Agriculture-inspected.[21]  On the Stone

10    Gate Foods website, Second Bite also assures potential customers of their "[f]ood safety program

11    with a comprehensive quality assurance team."[22]

12

13    13.

14    On information and belief, Second Bite's knowledge that the frozen food products it

15    manufactured for Daily Harvest would be distributed to Daily Harvest's customers across the United

16    States and in the interstate marketplace, including to Daily Harvest's customers in Oregon,

17    constitute sufficient "minimum contacts" with the State of Oregon so that maintenance of this suit

18    in this court is appropriate, fair, and just.

19

20    14.

21    Further, on information and belief and as alleged in this complaint, Second Bite distributed,

22    processed, and/or manufactured goods that were received and consumed by Plaintiff in the state of

23    Oregon and caused Plaintiff's injury in Oregon. Accordingly, this court has jurisdiction over Second

24    Bite under Oregon Rules of Civil Procedure 4.

25

26

[21] https://stonegate-foods.com/our-facilities/
[22] https://stonegate-foods.com/our-facilities/

Page 6 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

1

2

15.

3    Defendant Smirk's Ltd. is a limited liability company incorporated in the state of Colorado,

4    with its principal offices located at 17601 US Highway 34, Fort Morgan, CO 80701.[23, 24]

5

16.

6    Smirk's advertises itself as a food product importer, industrial wholesaler, and supplier

7    dedicated to sourcing ingredients in a "sustainable, responsible way," by maintaining close

8

9    relationships with its partners "to deliver the best in value, quality, and ethical sustainability for

10    everyone."[25] Smirk's has four warehouses across the United States and claims to acquire its

11    ingredients "directly from the source" from partners around the world.[26] On its website, Smirk's

12    also advertises its transparent, "dedicated quality assurance department... to ensure compliance with

13    FSMA and GFSI standards at all times."[27]

14

15

17.

16    On information and belief, Smirk's supplied the organic tara flour that Second Bite used to

17    manufacture the Lentil Crumbles product. The organic tara flour contained in the Lentil Crumbles

18    was identified by Defendant Daily Harvest as the ingredient responsible for customers' adverse

19    reactions to the Lentil Crumbles.[28]

20    // // // //

21

22

23

24    [23]https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntityResults&nameTyp=
       ENT&masterFileId=20071458259&entityId2=20071458259&fileId=20071458259&srchTyp=ENTITY

25    [24] https://smirks.com/industrial-natural-food-ingredients-contact-us/
       [25] https://smirks.com/why-work-with-us/

26    [26] https://smirks.com/food-ingredient-suppliers/
       [27] https://smirks.com/why-work-with-us/
       [28] https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory#

Page 7 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

1

2

18.

3

On information and belief, Smirk's knew at all times in its relationship with Second Bite

4

that Second Bite was a manufacturer for food brands across the United States and that Smirk's

5

organic tara flour would be used to manufacture products that would be sold or otherwise offered

6

for value to customers around the United States.

7

19.

8

On information and belief, Smirk's knowledge described above, its intentional provision of

9

food ingredients to customers around the country, and its knowledge that the organic tara flour it

10

supplied to Defendant Second Bite would be distributed in the interstate marketplace, including to

11

12

customers in Oregon, constitute sufficient "minimum contacts" with the State of Oregon such that

13

maintenance of this suit in this court is appropriate, fair, and just.

14

20.

15

Further, on information and belief and as alleged in this complaint, Smirk's distributed and

16

processed goods that were received and consumed by Plaintiff in the state of Oregon and caused

17

Plaintiff's injury in Oregon. Accordingly, this court has jurisdiction over Second Bite under Oregon

18

19

Rules of Civil Procedure 4.

20

**GENERAL ALLEGATIONS AND BACKGROUND**

21

21.

22

To sell Daily Harvest's products, the founders, promoters, officers, executives, and Board

23

Members of Daily Harvest determined that they would widely promote the company's products,

24

including through the use of social media influencers. Daily Harvest's goal was to widely broadcast,

25

to a large population of each of its planned demographics, that its products were pure, wholesome,

26

safe, healthy, nutritious, vegan and primarily organic.

Page 8 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

1

2
                                    22.

3       Daily Harvest intended to make, and did make, representations to consumers, including

4    plaintiff, that it had well-developed, safe, primarily organic supply chains in place and that it used

5    good manufacturing practices (GMP) to produce and safely deliver healthy and nutritious food

6    products to consumers that were safe for human consumption, and specifically that its products were

7    merchantable and fit for the specific use of its customers, being made with only unadulterated,

8    contaminate-free ingredients.

9
                                    23.

10
11      Second Bite and Smirk's Ltd., as facilities that manufacture, process, pack, or hold food for

12   sale in the United States, are required to register under § 415 of the Federal Food, Drug, and

13   Cosmetic Act (FDCA). 21 U.S.C.A. § 350d(a)(1). Under § 415 of the FDCA, Second Bite and

14   Smirk's are required to "implement preventive controls" to provide assurances that the food

15   "manufactured, processed, packed, or held by such facility will not be adulterated," 21 U.S.C.A. §

16   350g(c), including adherence to Federal current Good Manufacturing Practices (GMPs), 21 C.F.R.

17   §117, Subpart B.

18

19                                  24.

20      Under Federal GMPs, requirements for facilities registered under § 415 of the FDCA include

21   but are not limited to: Supervision of the facility's overall sanitation by "one or more competent

22   individuals assigned responsibility for [that] function," 21 C.F.R. § 117.80(a)(3); Adequate

23   maintenance and sanitation of facility grounds, storage, equipment, surfaces, utensils, and other

24   equipment to prevent adulteration of food, 21 C.F.R. sections 117.20, 117.35, 117.40; Conducting

25   all operations in the manufacturing, processing, packing, and holding of food "in accordance with

26   adequate sanitation principles," 21 C.F.R. § 117.80(a)(1), "under such conditions and controls as are

Page 9 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 47 of 78

1  necessary to minimize the potential for the growth of microorganisms...contamination of food, and

2  deterioration of food," 21 C.F.R. § 117.80(c)(2); Employing appropriate quality control operations

3  "to ensure that food is suitable for human consumption." 21 C.F.R. § 117.80(a)(2); Using chemical,

4  microbial, or extraneous-material testing procedures "where necessary to identify sanitation failures

5  or possible allergen cross-contact and food contamination," 21 C.F.R. § 117.80(a)(5); Inspecting

6  and handling raw materials and other ingredients "as necessary to ascertain that they are clean and

7  suitable for processing into food and must be stored under conditions that will protect against...

8  contamination and minimize deterioration," 21 C.F.R. § 117.80(b)(1); and taking adequate measures

9  "to destroy or prevent the growth of undesirable microorganisms," 21 C.F.R. § 117.80(c)(4).

10

11

12                                                   25.

13       Second Bite made representations on its website that its facilities were clean and safe for

14  food manufacturing and packaging, and that manufactured food products would be vetted by its

15  "food safety program" and "comprehensive quality assurance team."[29]

16                                                   26.

17

18       Smirk's made representations that its facilities were clean and safe for the importation,

19  storage, packaging, and transportation of food ingredients, and that its products were vetted by its

20  quality assurance department dedicated "to ensure compliance with FSMA and GFSI standards."[30]

21                                                   27.

22       As facilities regulated by the FDA that manufacture, process, pack, or hold food for sale in

23  the United States, Defendants Second Bite and Smirk's represented that they used GMP to produce

24  and safely deliver healthy and nutritious food products to consumers that were safe for human

25

26
_____
[29] https://stonegate-foods.com/our-facilities/
[30] https://smirks.com/why-work-with-us/

Page 10 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 48 of 78

1
2    consumption, and specifically that its products were merchantable and fit for the specific use of its
3    customers, being made with only unadulterated, contaminate-free ingredients.

4                                                    28.

5         On information and belief, Defendants Daily Harvest, Second Bite, and Smirk's did not
6    maintain GMP nor did any Defendant adequately test and certify that its products, specifically the
7    Lentil Crumbles and the organic tara flour incorporated into the Lentil Crumbles, were healthy,
8
9    nutritious, free of contamination by biological pathogens, toxins, or chemical contaminants, and that
10   Lentil Crumbles and the organic tara flour were not adulterated within the meaning of the federal
11   Food, Drug and Cosmetic Act and/or Oregon law governing food safety and/or did not violate
12   Oregon's Unlawful Trade Practices Act.

13                                                   29.

14        The French Lentil + Leek Crumbles consumed by Plaintiff contained contaminated
15   ingredients, manufactured, packaged, distributed and/or sold by the Defendants Daily Harvest and,
16   on information and belief, Second Bite and Smirk's.
17

18                                                   30.

19        Both the Lentil Crumbles product and, on information and belief, the organic tara flour
20   contained in the Lentil Crumbles product, were adulterated and contaminated with an unknown
21   biological pathogen, chemical or toxin that caused consumers, including plaintiff to become
22   violently ill. On information and belief, the contaminant in the Lentil Crumbles and tara flour was
23   zearalenone.
24

25                                                   31.

26        Daily Harvest became aware that consumers of its Lentil Crumbles were becoming sick
     following ingestion of its product. Instead of immediately and urgently warning purchasers and

Page 11 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
                                    **BOWERSOX LAW FIRM, P.C.**
                                        385 1ˢᵗ St., Suite 215
                                       Lake Oswego, OR 97034
                             (503) 452-5858      (800) 255-1996
                                    Jeffrey@BowersoxLaw.com
                                                              Exhibit A, Page 49 of 78

consumers of its product of the potential danger to their physical and emotional health that would occur from eating the contaminated Lentil Crumbles, Daily Harvest instead went into a "product reputation protection mode" and minimized the concerns of injured consumers who notified the company of their illness after eating the Lentil Crumbles.

32.

Specifically, Daily Harvest, as a direct-to-consumer food product seller, had all the necessary information that would be required for it to immediately contact all persons to whom its Lentil Crumbles had been delivered and warn them by a clear, unequivocal and urgent message that the Lentil Crumbles were not safe to eat, and that Lentil Crumbles were causing large numbers of consumers of the product to experience severe abdominal pain, elevated liver enzymes and bilirubin levels, jaundice and other symptoms that would appear to a reasonable physician to be signs of gallbladder and/or liver injury requiring prompt surgical removal of the patient's gallbladder.

33.

By using all of the most immediately available methods, that is, text message and/or email, as well as prominent warnings and notifications on its website, Daily Harvest could have easily informed its customers and other Lentil Crumbles consumers of the risk of injury from consuming its Lentil Crumbles; warning consumers not to eat the product; and describing symptomology reported by consumers who had eaten Lentil Crumbles.

34.

Instead, Daily Harvest issued vaguely worded and insufficient warnings to its customers and influencers, including plaintiff, to whom Daily Harvest had sold and/or provided promotional products. Daily Harvest failed to use its many resources to properly and urgently warn consumers of its product that they were in potential danger from eating Lentil Crumbles.

Page 12 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 50 of 78

1

2                                        35.

3          Daily Harvest failed to respond to customer's reports of serious illness by giving any direct,

4    urgent warning that the Lentil Crumbles should not be consumed, by giving a full description of the

5    symptomology reported by injured consumers, or by informing consumers that the product should

6    be saved for testing. Instead, notifications related to the Lentil Crumbles and the contamination of

7    the product were, and are currently, posted on Daily Harvest's website with the requirement to "click

8    through" to find further information. There is no prominent banner warning on Daily Harvest's

9    website, no text messages with any specific and urgent warning, and no clear or definitive warning

10   by email has been given to customers or other consumers to whom the Lentil Crumbles were

11   delivered, including plaintiff, that the Lentil Crumbles should not be eaten, describing symptoms of

12   illness caused by the product, and/or instructing that the product should be saved for testing.

13

14                                       36.

15         Instead, on June 27, 2022, Daily Harvest stated through its CEO that it was "frustrated" and

16   that it had found no evidence of any contamination in the Lentil Crumbles. In that notice, the

17   company's website and social media stated,

18
             "We are confident this issue is limited to our French Lentil + Leek Crumbles and
19           does not impact any of our other 100+ menu items. **We are still eating and
             feeding our families all of our other products and they are safe for you to do
20           the same."** (emphasis added) [31]

21

22                                       37.

23         On July 19, 2022, Daily Harvest made an additional statement through its CEO Rachel Drori

24   on the company's website and social media addressing their efforts to address the cause of the issues

25   with the Lentil Crumbles product:

26
     ───────────────
     [31] https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory#

     Page 13 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
     Warranties;  Misrepresentation; Unlawful Trade Practice
                              **BOWERSOX LAW FIRM, P.C.**
                                    385 1st St., Suite 215
                                   Lake Oswego, OR 97034
                              (503) 452-5858    (800) 255-1996            Exhibit A, Page 51 of 78
                                  Jeffrey@BowersoxLaw.com

1

2    **"At this time, we have identified tara flour as the cause of the issue. Our**
**extensive investigation has involved many experts analyzing data from all**
3    **sources. We have only used this ingredient in French Lentil + Leek Crumbles**
**and we are no longer sourcing from this producer who does not provide any**
4    **ingredients for our 140+ other items... the data** has repeatedly indicated **that the**
**issue is isolated to French Lentil + Leek Crumbles.** The testing process and
5    investigation also validated the safety of our supply chain and manufacturing
processes. We are confident that we continue to uphold the highest standards for
6    quality and safety. You can safely enjoy the rest of our 140+ items with
confidence."[32]
7

8                                          38.

9        The brief description of "Organic Tara" on the product page for the Lentil Crumbles on Daily

10   Harvest's website claims the ingredient is "a protein-rich flour made from the seeds of the tara

11   tree."[33] According to prominent tara exporters, tara pods and seeds are used to make three main

12   products: tara gum, made from the endosperm (the outer layer of the "meat") of the seeds, used as

13   a thickener and stabilizer in foods and cosmetics; Tara powder, a tannin-rich substance made from

14   the pods encasing the seeds, used mostly in leather tanning; And tara germ or tara protein, made

15   from the germ (nutrient-dense core) of the tara seeds.[34,35] Another exporter's technical data sheet

16   for their tara gum powder, which can be added to thicken or stabilize food products, only contains

17   about 2% protein by weight.[36] This suggests that the "organic tara" used in the Crumbles is tara

18   protein, which would serve the purpose of boosting the Crumbles' nutrient profile by adding protein

19   and fiber.[37]

20

21

22

23

24   _____

25   [32] https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory#
     [33] https://www.daily-harvest.com/browse/crumbles/french-lentil-leek
26   [34] https://www.exandal.com/en/tara-germ/
     [35] https://molinosasociados.com/productos/
     [36] https://www.colorexa.com/wp-content/uploads/2019/03/TDS-ORGANIC-TARA-GUM_Retail-_Colorexa.pdf
     [37] https://unipektin.ch/wp-content/uploads/2020/11/Product-Information-Tara-Protein-Molinos-Asociados-Peru.pdf

Page 14 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 52 of 78

39.

According to Neal Fortin, a Professor in the Department of Food Science and Human Nutrition and Director of the Institute for Food Laws & Regulations at Michigan State University, tara protein powder "milled from the germ of the tara seeds does not have a GRAS [generally regarded as safe] use, does not have a published prior sanction, and is not an approved food additive."[38] Because tara protein powder lacks FDA approval through any of these three avenues, any food containing it is adulterated under the federal Food, Drug and Cosmetics Act, 21 U.S.C.A. § 342.

40.

On information and belief, multiple other products sold by Daily Harvest have resulted in consumer complaints of illness and symptoms essentially identical to the illness and symptoms reported to be caused by consumption of Lentil Crumbles. These consumer-reported symptoms include liver enzyme elevation, jaundice, abdominal pain, and fatigue. The additional Daily Harvest products reportedly causing such symptoms include certain smoothies, certain flatbreads and the Sweet Potato + Wild Rice Hash bowl products.

41.

Daily Harvest has reported that it instituted a "voluntary recall" of all units of its Lentil Crumbles produced between April 28 and June 17, 2022. Daily Harvest reports that it has now recalled all lots of its Lentil Crumbles that were produced.

// // // //

---

[38] https://www.foodsafetynews.com/2022/08/a-discussion-of-tara-and-gras-status/#:~:text=No%20use%20of%20tara%20has,FDA%20as%20a%20food%20additive.

Page 15 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 53 of 78

1

2

42.

3    Approximately 500 consumers have reported illness or adverse reactions after consuming

4    Lentil Crumbles.

5

43.

6    According to Daily Harvest nearly 30,000 units of the product were distributed throughout

7    the US by direct online sales, retail sales at pop-up stores in Chicago and Los Angeles. Social media

8    influencers and other media personnel were also provided samples of Lentil Crumbles by Daily

9    Harvest.

10

11

44.

12    Daily Harvest's Lentil Crumbles were packaged in a 12 oz. sealed bag and distributed frozen

13    as a premade re-heatable product. The package contained the Daily Harvest logo at the top,

14    "CRUMBLES" below the logo, and "French Lentil+ Leek" also printed on the label in bold type.

15

45.

16

17    Daily Harvest has actively encouraged the destruction of evidence in this case by informing

18    all persons who contacted the company with concerns about Lentil Crumbles that they should

19    dispose of or otherwise destroy the product. Daily Harvest has also advised destruction of the

20    product in its email communications to consumers and through its website click-thru product

21    updates. This action by the company is an intentional attempt to destroy evidence that could provide

22    valuable information to physicians and customers who have been sickened by eating Lentil

23    Crumbles. Testing of the affected product is important to understanding what specific pathogen

24    and/or chemical or toxin is contained in the contaminated products and also to help determine the

25    amount of any such contamination in the product.

26

Page 16 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

BOWERSOX LAW FIRM, P.C.
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 54 of 78

1

46.

2

3      Despite Daily Harvest's encouraged customers to dispose of and destroy their packages of

4  Lentil Crumbles. After his severe illness, Plaintiff contacted the FDA for testing of his remaining

5  Lentil Crumbles product. The chain of custody of Plaintiff's remaining Lentil Crumbles product is

6  recorded in detail in the Collection Report of the FDA Consumer Safety Officer (CSO) who

7  collected Plaintiff's sample. The CSO collected Plaintiff's sample directly from Plaintiff's home on

8  July 6th, 2022, the sample consisted of one roughly "half full bag of 'French Lentil + Leek'

9  'CRUMBLES' distributed by Daily Harvest Inc.," with lot code L5-A 11:18.[39] The CSO "removed

10  [the package of the remaining Lentil Crumbles] from the consumers [sic] freezer then physically

11  confirmed it was frozen. The consumer also confirmed they received the product frozen and

12  immediately placed it into their freezer."[40]

13

14

47.

15

16      The FDA CSO's Collection Report details the condition of the remaining product and the

17  measures taken to preserve its frozen state once it entered his custody:

18      ...Once collected I issued an FDA 484 Receipt for Samples, placed the product in a
       small hard shell cooler with dry ice, and walked to the Rose City RP sample prep
19     room for preparation....

20     **How Prepared**
       Sample prepared in Rose City RP sample prep room on 7/6/2022. I placed the sample
21     into a ziplock bag, taped it shut, then marked it per "Collector's ID on
       Package/Document". I then sealed the sample with an FDA 415 marked per
22     "Collector's ID on Seal". I then placed the sealed sample in a hard shell cooler with
       approximately 3 pounds of dried ice [sic] to maintain the product in a frozen state,
23     taped the cooler closed, and affixed the shipping label with tape.

24

25

26

---

[39] Form FDA 484, "Receipt For Samples," Sample #1175803
[40] "Collection Report," Food and Drug Administration Office of Regulatory Affairs, Sample #1175803

Page 17 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties; Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 55 of 78

1

**Remarks**

2   Sample collected, prepared, and shipped to KCL[41] on 7/06/2022 via UPS. I collected
3   the sample directly from the consumer, who reported they received the product on
    May 5, 2022 in an intact box that contained dry ice to maintain product tempreature
4   [sic]. The consumer additionally reported the product appeared to be frozen and in
    good condition at time of receipt, and that the product had remained in their freezer
5   in a frozen state while in their possession.

6   Sample hand delivered to UPS drop off location at 13203 SE 172nd Ave Ste 166,
7   Happy Valley, OR at 1400 on 07/06/2022.[42]

8                                          48.

9       The FDA Kansas City Laboratory received the Plaintiff's Lentil Crumbles sample on

10  7/07/2022.[43] Plaintiff's Lentil Crumbles product sample was divided into two portions, with one

11  portion delivered to "MYC Lab 07/15/2022 for use in analytical analysis" and one portion

12  delivered to "sample custodian on 07/15/2022 for delivery to FCC."[44]

13                                         49.

14      In the "Lab Conclusion" dated 8/03/2022, the FDA's analysis of Plaintiff's Lentil Crumbles

15  product sample detected 2.95 parts per billion of ZEN, a common abbreviation for

16  zearalenone.[45] Zearalenone is a mycotoxin (a toxin produced by fungi) with studied

17  immunotoxic and hepatotoxic effects.[46]

18

19

20

21

22

---

[41] FDA Kansas City Laboratory in Lenexa, Kansas
23  [42] "Collection Report," Food and Drug Administration Office of Regulatory Affairs, Sample #1175803
    [43] "Summary Report," Food and Drug Administration Office of Regulatory Affairs, Sample #1175803
24  [44] Form FDA 431 MYC, Sample #1175803
    [45] "Summary Report," Food and Drug Administration Office of Regulatory Affairs, Sample #1175803.
25  [46] Ropejko, K., & Twarużek, M. (2021). Zearalenone and Its Metabolites-General Overview, Occurrence, and
    Toxicity. Toxins, 13(1), 35.
    https://doi.org/10.3390/toxins13010035
26  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8469335/
    https://www.mdpi.com/2072-6651/14/6/386/htm
    https://www.tandfonline.com/doi/full/10.1080/09540105.2018.1503233?scroll=top&needAccess=true

Page 18 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

**FIRST CLAIM FOR RELIEF – PERSONAL INJURY**
**COUNT ONE**
**(Strict Products Liability)**
**(Against Defendants Daily Harvest, Second Bite, and Smirk's)**

50.

Plaintiff realleges paragraphs 1 through 48, above as though fully set forth herein.

51.

Defendants Daily Harvest and on information and belief, Second Bite and Smirk's Ltd. manufactured, packaged, distributed, sold and/or otherwise provided for value to plaintiff the Lentil Crumbles product and/or the organic tara flour later incorporated into the Lentil Crumbles.

52.

The Lentil Crumbles and the organic tara flour later incorporated into the Lentil Crumbles were adulterated foods within the meaning of the federal Food, Drug and Cosmetics Act, 21 U.S.C.A. § 342, and under Oregon state law, ORS § 616.235, at the time the Lentil Crumbles and/or the organic tara flour left the control of Daily Harvest and on information and belief, Second Bite and Smirk's Ltd., when introduced into interstate commerce, and when sold and delivered to plaintiff, in that the Lentil Crumbles and the organic tara flour later incorporated into the Lentil Crumbles bore or contained a poisonous or deleterious substance that rendered them injurious to health.

53.

On information and belief, the Lentil Crumbles were also adulterated within the meaning of the federal Food, Drug and Cosmetics Act, 21 U.S.C.A. § 342 because the organic tara flour the Lentil Crumbles contained has not been approved for use in foods by the FDA.

Page 19 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 57 of 78

1

2

54.

3      Daily Harvest and on information and belief, Second Bite and Smirk's Ltd., introduced the

4  Lentil Crumbles and the organic tara flour later incorporated into the Lentil Crumbles into interstate

5  commerce in violation of the Food, Drug, and Cosmetics Act, 21 U.S.C.A. § 331.

6                                          55.

7      Defendant Daily Harvest sold and delivered for value to Plaintiff the Lentil Crumbles, an

8  adulterated food, in violation of ORS § 616.215.

9                                          56.

10

11     Defendant Daily Harvest offered for consumption the Lentil Crumbles, an adulterated food,

12  in violation of § 3-101.11 of the 2009 Federal Food Code, adopted by the Oregon Public Health

13  Division Foodborne Illness Prevention Program under Oregon's Food Sanitation Rules.

14                                         57.

15     Daily Harvest and on information and belief, Second Bite and Smirk's, failed to employ

16  appropriate quality control operations to ensure that the Lentil Crumbles and/or the organic tara

17  flour later incorporated into the Lentil Crumbles were suitable for human consumption in violation

18

19  of current Good Manufacturing Practices (GMPs). 21 C.F.R. § 117.80(a)(2).

20                                         58.

21     On information and belief, defendants Daily Harvest, Second Bite, and Smirk's failed to

22  employ other GMPs including, but not limited to: using chemical, microbial, or extraneous-material

23  testing procedures "to identify sanitation failures or possible allergen cross-contact and food

24  contamination," 21 C.F.R. § 117.80(a)(5); inspecting and handling raw materials and other

25  ingredients "to ascertain that they [were] clean and suitable for processing into food," 21 C.F.R. §

26

Page 20 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 58 of 78

1
2    117.80(b)(1); and taking adequate measures "to destroy or prevent the growth of undesirable
3    microorganisms," 21 C.F.R. § 117.80(c)(4).

4                                          59.

5          The Lentil Crumbles product and/or the organic tara flour later incorporated into the Lentil
6    Crumbles manufactured, packaged, distributed, and/or sold by Daily Harvest and on information
7    and belief, Second Bite and Smirk's, were in a defective condition that was unreasonably dangerous
8    to the ultimate user, plaintiff Luke Pearson, at the time the product and/or the organic tara flour later
9    incorporated into the product left the hands of Daily Harvest and on information and belief, Second
10   Bite and Smirk's, and the Lentil Crumbles product and the organic tara flour later incorporated into
11   the product was intended to, and did in fact, reach plaintiff without substantial change in its
12   condition.

13
14                                          60.

15         At the time plaintiff received the Lentil Crumbles product manufactured, packaged,
16   distributed, and/or sold by Daily Harvest and on information and belief, Second Bite and containing
17   the organic tara flour packaged, distributed, and/or sold, on information and belief, by Smirk's, it
18   was in a condition that was not contemplated by the plaintiff Pearson, and he did not reasonably
19   expect that the Lentil Crumbles were adulterated and were unreasonably dangerous to his health and
20   well-being.

21
22                                          61.

23         The Lentil Crumbles product manufactured, packaged, distributed, and/or sold by Daily
24   Harvest and on information and belief, Second Bite and containing the organic tara flour packaged,
25   distributed, and/or sold, on information and belief, by Smirk's, was in a defective condition because
26   of a flaw arising from the manufacturing process or delivery of the ingredient or the product or

Page 21 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 59 of 78

1
2     another, currently indeterminate defect that caused Lentil Crumbles and/or the organic tara flour to
3     be adulterated and unfit for human consumption.

4                                             62.

5          Following delivery of the Lentil Crumbles to plaintiff and his consumption of Lentil
6     Crumbles, plaintiff experienced personal injury as more fully described below.

7                                             63.

8          On May 29, 2022, plaintiff first cooked and ate Lentil Crumbles on flatbread. Plaintiff made
9
10    video content to include in a daily vlog but never posted the video because soon after eating the
11    products, plaintiff became ill, including significant stomach pain that could not be relieved by
12    positioning and/or using over-the-counter products including Gas-X. Plaintiff was unable to get
13    comfortable or get pain relief, but eventually fell asleep from exhaustion. Plaintiff woke up in pain
14    multiple times during the night. Plaintiff felt relief the next morning.

15                                            64.

16
17         Approximately a week later, on June 6, 2022, at approximately 10:00PM, plaintiff prepared
18    another meal of Lentil Crumbles on another flatbread that was provided to plaintiff by defendant
19    Daily Harvest. Within an hour after eating the Lentil Crumbles, plaintiff again experienced
20    abdominal pain, this time accompanied by a low-grade fever and chills. Plaintiff took a Covid test
21    that was negative. Plaintiff and his partner were scheduled to travel to Mexico on a 6:00AM flight
22    from Portland and plaintiff was concerned about whether he could travel because of his illness.

23                                            65.

24
25         On June 7, 2022, at about 3:00AM plaintiff and his partner woke up to see what his condition
26    was and to determine whether they could travel to Mexico as planned. Plaintiff still had a fever and

Page 22 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 60 of 78

1
2  chills and now a headache. Plaintiff and his partner cancelled their trip because he was so sick.
3  Plaintiff tested negative again for Covid.

4                                        66.

5        On June 8, 2022, Plaintiff's symptoms worsened. While sleeping, he suddenly woke up
6  having severe bilateral low back pain described as "the worst of my life. It felt like I had thrown my
7  back out but I hadn't done anything to physically hurt myself. I couldn't even roll my body over in
8  the bed or sit up on my own." Plaintiff's partner had to help him sit up and stand up because the
9  pain was so bad it took his breath away and the chills shaking his body made the pain worse. Because
10 this was the sickest plaintiff had felt in many years, he decided he needed medical care. Plaintiff
11 was thereafter given blood and urine tests and it was determined that plaintiff had a high bilirubin
12 level and very elevated liver enzymes. It was determined that plaintiff did not have a urinary tract
13 infection or kidney stones. or kidney infection or kidney stones. Plaintiff's PCR Covid test
14 administered at the physician's office returned negative. Plaintiff's physician did not know what
15 was wrong but sent plaintiff home with instructions to call the physician or go to a hospital
16 Emergency Department if his condition deteriorated.
17
18

19                                       67.

20       On June 9, 2022, Plaintiff was still in significant pain with fever and chills. As instructed
21 plaintiff called his physician's office. Plaintiff's physician expressed concern about plaintiff's
22 elevated liver enzymes and ordered a CT scan of his abdomen and pelvis for that same day. Plaintiff
23 was also tested for hepatitis. All hepatitis tests came back negative. Later that night plaintiff noticed
24 some yellowing of his eyes and skin.
25
26

Page 23 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com
Exhibit A, Page 61 of 78

1

2
                                    68.

3
        On June 10, 2022, Plaintiff again called his doctor to discuss next steps for treatment and to

4
report his jaundice. Plaintiff's physician directed him to the Emergency Department of Oregon

5
Health and Sciences University Hospital ("OHSU") and called ahead to alert the emergency

6
department that plaintiff would be arriving. Plaintiff thereafter checked into the emergency

7
department and more blood tests were performed. The physician also ordered an MRCP test to

8
visualize plaintiff's gallbladder and liver. Plaintiff remained in the emergency department for 26

9
hours before being admitted to the general ward of the OHSU hospital.

10

11
                                    69.

12
        Early in the morning of June 11, 2022, plaintiff was advised by physicians to have his

13
gallbladder removed because the doctors believed a gallstone might have blocked a biliary duct at

14
some point thereby causing his liver enzymes to spike. The physicians believed plaintiff's body had

15
naturally passed the suspected stone. But, in order to prevent another incident of the same type with

16
resultant further liver insult, plaintiff was advised to undergo gallbladder removal surgery, medically

17
known as "cholecystectomy." Plaintiff was put on stand-by or the "add on" list for surgery. Plaintiff

18
was informed late in the afternoon that there was no operating room available that day and his

19

20
surgery would instead occur the next morning at 7:30AM.

21
                                    70.

22
        On June 12, 2022, plaintiff's gallbladder was surgically removed as had been prescribed by

23
his physicians. Plaintiff remained in the hospital overnight for observation to determine if his liver

24
enzyme levels were trending downward.

25

26

Page 24 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 62 of 78

1

2

71.

3

On June 13, 2022, plaintiff was discharged from the hospital and his liver enzymes and

4

bilirubin were improving.

5

72.

6

Five days later, on June 18, 2022, plaintiff saw Abby Silberman's TikTok video describing

7

her experience after eating defendant Daily Harvest's Lentil Crumbles. Silverman reported she had

8

terrible stomach pain and elevated liver enzymes and was hospitalized. At that point plaintiff made

9

the correlation that he, like Ms. Silverman, received a promotional package from defendant Daily

10

Harvest with the same Lentil Crumbles and flatbreads, and after eating the Lentil Crumbles she

11

developed these same symptoms plaintiff had.

12

13

73.

14

On June 19, 2022, between 8:30 and 9:30AM Pacific Time plaintiff posted a video telling

15

of this realization and correlation on TikTok and Instagram. At 11:07AM plaintiff received a mass

16

email from defendant Daily Harvest instructing consumers to destroy any Lentil Crumbles they may

17

have and stating that Daily Harvest was "actively looking into this."

18

19

74.

20

If defendant Daily Harvest had taken immediate action to directly notify everyone to whom

21

it had delivered it Lentil Crumbles, including plaintiff, and had given a fair and accurate description

22

of symptoms that consumers had experienced after eating the product, plaintiff would have been

23

able to report this fact to his physicians and he would not have undergone the surgical procedure to

24

remove his gallbladder.

25

26

Page 25 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 63 of 78

1

2

75.

3

Plaintiff remains permanently injured as a result of the removal of his gallbladder and is

4 subject to future susceptibility of disease, most especially nonalcoholic fatty liver disease

5 ("NAFLD"). Nonalcoholic fatty liver disease is associated with having undergone cholecystectomy.

6 In 2013 the American Journal of Gastroenterology reported a study indicating that NAFLD

7 incidence was significantly greater among cholecystectomy recipients (48.4%) than in nonrecipients

8

9 with (34.4%) or without gallstones (17.9%), after adjusting for age and sex (P<.01 for all

10 comparisons). Multivariate analysis indicated a significant association between NAFLD and

11 cholecystectomy (OR=2.43; 95% CI, 1.81-3.28), while no association was observed between

12 NAFLD and gallstones (OR=1.09; 95% CI, 0.84-1.42).

13

76.

14

Plaintiff has sustained significant personal injury, including but not limited to: severe pain,

15 anxiety and fear, mental anguish of suffering from an illness with an unknown cause at the time he

16

17 was seeking treatment, disruption of his normal daily living activities, cancellation of personal travel

18 plans, and the inability to perform his livelihood. Plaintiff has incurred past medical expenses and

19 will more probably than not incur future medical expenses related to his illness caused by defendant

20 Daily Harvest's adulterated Lentil Crumbles food product.

21

77.

22

Judgment should be entered in plaintiff's favor against defendants Daily Harvest, Second

23 Bite, and Smirk's in an amount determined by the jury to fully and completely compensate plaintiff

24

25 for his past and future noneconomic damages as instructed by the court, in an amount not to exceed

26 $5,000,000. Plaintiff reserves the right to amend his claim for noneconomic damages to conform to

the evidence presented at trial.

Page 26 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties; Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 64 of 78

78.

Judgment should be entered in plaintiff's favor against defendants Daily Harvest, Second Bite, and Smirk's in an amount determined by the jury to fully and completely compensate plaintiff for his past and future economic damages as instructed by the court, in an amount not to exceed $100,000. Plaintiff reserves the right to amend his claim for economic damages to conform to the evidence presented at trial.

**FIRST CLAIM FOR RELIEF – PERSONAL INJURY**
**COUNT TWO**
**(Negligence)**
**(Against Defendants Daily Harvest, Second Bite, and Smirk's)**

79.

Plaintiff realleges paragraphs 1 through 78 above as though fully set forth herein.

80.

On information and belief, Defendants Daily Harvest, Second Bite, and Smirk's were negligent in one or more of the following ways that foreseeably created an unreasonable risk of harm to consumers of its Lentil Crumbles product, including plaintiff:

a.    Defendants did not adequately monitor their food supply chain in a manner that would discover adulteration of its products by ingredients obtained from one or more of their suppliers and take action to prevent the delivery of the adulterated organic tara flour and the adulterated Lentil Crumbles from being delivered to consumers;

b.    Defendants did not employ Good Manufacturing Processes to prevent the introduction of toxins or other forms of contamination to become introduced into the organic tara flour and the Lentil Crumbles and thereafter to prevent the delivery

Page 27 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 65 of 78

of adulterated Lentil Crumbles from being delivered to consumers, those GMPs including, but not limited to:

    i.  Appropriate quality control operations to discover adulteration of the organic tara flour and Lentil Crumbles and to thereafter prevent the delivery of adulterated Lentil Crumbles to consumers, 21 C.F.R. § 117.80(a)(2);

    ii.  Using chemical, microbial, or extraneous-material testing procedures to identify the contamination of the organic tara flour and Lentil Crumbles, 21 C.F.R. § 117.80(a)(5);

    iii.  Inspecting and handling the ingredients of the crumbles, including the organic tara flour, "to ascertain that they [were] clean and suitable for processing into food," 21 C.F.R. § 117.80(b)(1); and

    iv.  Taking adequate measures "to destroy or prevent the growth of undesirable microorganisms" in the organic tara flour and Lentil Crumbles, 21 C.F.R. § 117.80(c)(4).

81.

As a direct and reasonably foreseeable result of Daily Harvest's negligence and on information and belief, Second Bite's and Smirk's negligence, plaintiff was exposed to an unreasonable risk of harm and plaintiff sustained injury and damages as alleged in paragraphs 62 through 71 and paragraphs 75 through 78 above.

// // // //

Page 28 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 66 of 78

1

2

3       **FIRST CLAIM FOR RELIEF – PERSONAL INJURY**
                          **COUNT THREE**
4       **(Negligence *per se* and/or Violation of Statutory Duty)**
        **(Against Defendants Daily Harvest, Second Bite, and Smirk's)**

5                                    82.

6       Plaintiff realleges paragraphs 1 through 81, above as though fully set forth herein.

7                                    83.

8
        The violations of the safety statutes, codes, and regulations by Daily Harvest and on
9
        information and belief, Second Bite and Smirk's, alleged in paragraphs 23 through 24 and
10
        paragraphs 52 through 58, above constitute negligence per se and/or statutory negligence on the part
11
12      of defendant.

13                                   84.

14
        Plaintiff is a member of the class of persons intended to be protected by the statutes, codes
15
        and/or regulations alleged above, in that he is a person who consumed food products manufactured,
16
        packaged, distributed, and/or sold by Daily Harvest and on information and belief, Second Bite and
17
18      Smirk's.

19                                   85.

20      As a direct and reasonably foreseeable result of Daily Harvest's violations and on

21      information and belief, Second Bite's and Smirk's violations of the statutes, codes and/or regulations

22      alleged above, plaintiff sustained injury and damages as alleged in paragraphs 62 through 71 and

23      paragraphs 75 through 78 above.

24      *// // // //*

25

26

Page 29 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 67 of 78

1
2
3
4

## SECOND CLAIM FOR RELIEF – BREACH OF WARRANTY
## COUNT ONE
### (Breach of Express Warranty)
### (ORS 72.3130)
### (Against Defendant Daily Harvest)

5

86.

6

Plaintiff realleges paragraphs 1 through 85, above as though fully set forth herein.

7

87.

8
9
10
11
12
13

Defendant Daily Harvest expressly warranted that its food products, specifically including Lentil Crumbles, that it provided to consumers, including plaintiff Luke Pearson, were wholesome and healthy, nutritious, vegan, organic, safe for human consumption and not adulterated. Defendant's affirmations and warranty of its products safety and quality were made on its website and in other promotional materials.

14

88.

15
16
17
18
19

Defendant Daily Harvest's factual affirmations and warranty of its product quality and safety were part of the consideration that formed the basis of plaintiff's agreement to accept the Lentil Crumbles from defendant Daily Harvest, and to consume the Lentil Crumbles for the purpose of evaluating the desirability of the Lentil Crumbles.

20

89.

21
22
23
24
25
26

In fact, defendant's Lentil Crumbles were adulterated when received by plaintiff in breach of defendant's express warranty. As a result of defendant's breach of warranty, (which warranty plaintiff reasonably relied upon in consuming the Lentil Crumbles) plaintiff sustained the personal injuries, including removal of his gallbladder, and other damages described in paragraphs 62 through 71 and paragraphs 75 through 78 above.

Page 30 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858    (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 68 of 78

1

2
90.

3
Plaintiff gave notice to defendant Daily Harvest of it breach of express warranty by

4
informing defendant that he was sickened after consuming its adulterated product.

5
**SECOND CLAIM FOR RELIEF**
**COUNT TWO**

6
**(Breach of Implied Warranty of Merchantability)**

7
**(ORS 72.3140)**
**(Against Defendants Daily Harvest, Second Bite, and Smirk's)**

8
91.

9
Plaintiff realleges paragraphs 1 through 90, above as though fully set forth herein.

10

11
92.

12
Daily Harvest, Second Bite, and Smirk's produce, sell, and routinely deal in food production

13
and sales and are in the business of so doing. Defendants are merchants of food products as defined

14
under the Uniform Commercial Code ("UCC") and have the obligations of merchants under the

15
UCC.

16
93.

17

18
The delivery for value of food products consumed off premises by Daily Harvest and on

19
information and belief, Second Bite and Smirk's, constitutes a "sale" pursuant to ORS 72.3140.

20
Daily Harvest and on information and belief, Second Bite, manufactured, packaged, distributed

21
and/or sold the Lentil Crumbles to plaintiff that contained organic tara flour packaged, distributed

22
and/or sold, on information and belief, by Smirk's, under the terms of the UCC, and plaintiff

23
purchased the Lentil Crumbles in reliance on the implied warranty of merchantability.

24
// // // //

25

26

Page 31 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

1

94.

2

On information and belief, the Lentil Crumbles container was inadequate to prevent the

3

product from becoming adulterated in violation of the implied warranty of merchantability inherent

4

in the sale of its product under the UCC.

5

95.

6

The Lentil Crumbles and/or the organic tara flour contained in the Lentil Crumbles

7

manufactured, packaged, distributed, and/or sold to plaintiff by Daily Harvest and on information

8

and belief, Second Bite and Smirk's, breached the implied warranty of merchantability because the

9

product was in a condition such that the Lentil Crumbles and/or the organic tara flour later

10

incorporated into the Lentil Crumbles:

11

12

13        a.   would not pass without objection in the trade under the contract description;

14        b.   were not of fair average quality within the description;

15        c.   were not fit for the ordinary purposes for which food products are used, that

16             is, safe human consumption;

17

18        d.   were not adequately contained, packaged, and labeled as the agreement may

19             require; and

20        e.   did not conform to the promises or affirmations of fact made on the

21             container or label.

22

96.

23

Plaintiff's use of the product by eating it was plaintiff was reasonable and expected under

24

the parties' sale agreement and plaintiff reasonably relied on the implied warranty of merchantability

25

in accepting and consuming the Lentil Crumbles.

26

Page 32 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

97.

As a direct result of the breach of the implied warranty of merchantability by Daily Harvest and on information and belief, Second Bite and Smirk's, plaintiff sustained the personal injuries and damages described in paragraphs 62 through 71 and paragraphs 75 through 78 above.

98.

Plaintiff timely notified defendant Daily Harvest of its breach of the implied warranty of merchantability by providing it with notice of his injuries after consumption of the Lentil Crumbles.

**SECOND CLAIM FOR RELIEF**
**COUNT TWO**
**(Breach of Implied Warranty of Fitness for a Particular Purpose)**
**(ORS 72.3150)**
**(Against Defendants Daily Harvest, Second Bite, and Smirk's)**

99.

Plaintiff realleges paragraphs 1 through 98, above as though fully set forth herein.

100.

Daily Harvest and on information and belief, Second Bite and Smirk's, knew that plaintiff's purpose in receiving the Lentil Crumbles containing the organic tara flour was to obtain a product that was expected to be wholesome, healthy, unadulterated, and safe and fit for human consumption without causing injury.

101.

Daily Harvest and on information and belief, Second Bite and Smirk's, knew that they had superior knowledge of the condition of the Lentil Crumbles and the organic tara flour later incorporated into the Lentil Crumbles compared to plaintiff and that plaintiff relied on Defendants to provide a safe and unadulterated product. Daily Harvest and on information and belief, Second

Page 33 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 71 of 78

1
2    Bite and Smirk's, knew of plaintiff's purpose in obtaining the Lentil Crumbles containing the
3    organic tara flour that plaintiff reasonably relied on defendants' knowledge of his purpose.

4                                          102.

5        Plaintiff is in direct vertical privity with defendant Daily Harvest.

6                                          103.

7        Daily Harvest and on information and belief, Second Bite and Smirk's, are merchants under
8
9    the UCC and sold and/or distributed to plaintiff the Lentil Crumbles containing organic tara flour
10   sold and/or distributed, on information and belief, by Smirk's, for consumption at a place other than
11   their premises.

12                                         104.

13       As a direct result of the breach of the implied warranty of fitness for a particular purpose by
14   Daily Harvest and on information and belief, Second Bite and Smirk's, plaintiff sustained the
15   personal injuries and damages described in paragraphs 62 through 71 and paragraphs 75 through 78
16   above.
17
18                                         105.

19       Plaintiff timely notified defendant Daily Harvest of its breach of the implied warranty of
20   fitness for a particular purpose by providing it with notice of his injuries after consumption of the
21   Lentil Crumbles.
22   // // // //
23
24
25
26

Page 34 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

1

2
### THIRD CLAIM FOR RELIEF
### (Misrepresentation)
3
### (Against Defendant Daily Harvest)

4
106.

5
Plaintiff realleges paragraphs 1 through 105, above as though fully set forth herein.

6
107.

7
Daily Harvest misrepresented the condition and quality of the Lentil Crumbles product when

8
they knew or should have known through reasonable care that the product was adulterated and not

safe for human consumption.
9
108.

10
Daily Harvest represented that the Lentil Crumbles product was wholesome, healthy and

11
safe to eat when it was not. Daily Harvest knew that plaintiff and other consumers would rely on its

12
representations regarding the supposed quality and wholesomeness, the purity and unadulterated

13
nature of its Lentil Crumbles product.

14
109.

15
Plaintiff reasonably relied on the representations made by defendant Daily Harvest regarding

the supposed purity, wholesomeness and unadulterated quality of its product and therefore
16
consumed the product.

17
110.

18
Defendant Daily Harvest concealed its knowledge of the adulteration of its product and the

19
injuries and symptoms of injuries sustained by people who had consumed its Lentil Crumbles

20
product and who had thereafter reported those injuries and symptoms of injuries to Daily Harvest.

21
111.

22
As a direct result of the misrepresentations of the product's quality by Daily Harvest and

Daily Harvest's concealment of its knowledge of its Lentil Crumbles product's adulteration, as well
23
as the reports of injuries and symptoms of injuries made to Daily Harvest (or that became known to

24
Daily Harvest) plaintiff sustained the injuries and damages alleged in paragraphs 62 through 71 and

25
paragraphs 75 through 78 above.

26

Page 35 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 73 of 78

1

2    **FOURTH CLAIM FOR RELIEF**
     **(Violation of Oregon's Unlawful Trade Practices Act)**
3    **(Against Defendant Daily Harvest)**

4                              112.

5    Plaintiff realleges paragraphs 1 through 111, above as though fully set forth herein.

6                              113.

7    Daily Harvest represented that the Lentil Crumbles product had characteristics, ingredients,

8
     uses, benefits, quantities, or qualities that the goods do not have, specifically that the goods (Lentil
9
     Crumbles) were wholesome, pure unadulterated and safe for human consumption when the Lentil
10
     Crumbles were adulterated and unfit for human consumption.
11

12                             114.

13   Daily Harvest represented that the Lentil Crumbles were of a particular standard, quality, or

14   grade, when in fact the Lentil Crumbles were of another. Specifically, Daily Harvest represented

15   that the Lentil Crumbles were wholesome, pure, unadulterated and safe for human consumption
16
     when the Lentil Crumbles were adulterated and unfit for human consumption.
17

18                             115.

19   As a direct result of Daily Harvest's violation of ORS 646.608 (e) and/or (g) plaintiff

20   incurred reasonable and necessary medical bills as alleged in paragraph 78, above, constituting an

21   ascertainable loss of money as a result of Daily Harvest's willful use or employment of a method,

22   act or practice declared unlawful by those statutes.

23   // // // //

24

25

26

Page 36 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

116.

Plaintiff therefore brings action against Daily Harvest to recover his actual damages as proven at trial actual damages or statutory damages of $200, whichever is greater, together with plaintiff's reasonable attorney fees and costs as provided by ORS 646.

**NOTICE OF INTENT TO SEEK PERMISSION TO PLEAD CLAIMS FOR PUNITIVE DAMAGES AGAINST DEFENDANT DAILY HARVEST UNDER PLAINTIFF'S CLAIMS FOR STRICT PRODUCTS LIABILITY, NEGLIGENCE, NEGILGENCE *PER SE* AND/OR STATUTORY NEGLIGENCE, MISREPRESENTATION AND VIOLATION OF OREGON'S UNLAWFUL TRADE PRACTICES ACT.**

117.

Plaintiff hereby gives notice to defendant Daily Harvest of his intention to move the court for an order allowing plaintiff to plead a claim for punitive damages against defendant Daily Harvest.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment to entered in his favor and against defendant Daily Harvest as follows:

     a.  Judgment should be entered in plaintiff's favor jointly and severally against defendants Daily Harvest, Second Bite, and Smirk's under Plaintiff's First and Second Claims for Relief in an amount determined by the jury to fully and completely compensate plaintiff for his past and future noneconomic damages as instructed by the court, in an amount not to exceed $5,000,000. Plaintiff reserves the right to amend his claim for noneconomic damages to conform to the evidence presented at trial;

     b.  Judgment should be entered in plaintiff's favor jointly and severally against defendants Daily Harvest, Second Bite, and Smirk's under Plaintiff's First and

Page 37 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice
**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 75 of 78

1

2      Second Claims for Relief in an amount determined by the jury to fully and

3      completely compensate plaintiff for his past and future economic damages as

4      instructed by the court, in an amount not to exceed $100,000. Plaintiff reserves

5      the right to amend his claim for economic damages to conform to the evidence

6      presented at trial;

7   c.  Judgment should be entered in Plaintiff's favor against defendant Daily Harvest

8       under Plaintiff's Third and Fourth Claims for Relief in an amount determined by

9       the jury to fully and completely compensate plaintiff for his past and future

10      noneconomic damages as instructed by the court, in an amount not to exceed

11      $5,000,000. Plaintiff reserves the right to amend his claim for noneconomic

12      damages to conform to the evidence presented at trial;

13

14  d.  Judgment should be entered in plaintiff's favor against defendant Daily Harvest

15      under Plaintiff's Third and Fourth Claims for Relief in an amount determined by

16      the jury to fully and completely compensate plaintiff for his past and future

17      economic damages as instructed by the court, in an amount not to exceed

18      $100,000. Plaintiff reserves the right to amend his claim for economic damages

19      to conform to the evidence presented at trial;

20

21  e.  For plaintiff's reasonable attorney fees and costs incurred, pursuant to ORS

22      646.638;

23  // // // //

24

25

26

Page 38 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of
Warranties;  Misrepresentation; Unlawful Trade Practice
BOWERSOX LAW FIRM, P.C.
385 1st St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858      (800) 255-1996
Jeffrey@BowersoxLaw.com

Exhibit A, Page 76 of 78

1

2   f. For plaintiff's costs and disbursements as allowed by law and/or court rule; and

3   g. For other relief as the court deems just and equitable.

4 DATED this 2ⁿᵈ day of September, 2022.

5

6         BOWERSOX LAW FIRM, P.C.

7

8         s/ Jeffrey A. Bowersox

9         Jeffrey A. Bowersox, OSB No. 814422
          385 1ˢᵗ St., Suite 215

10        Lake Oswego, OR 97034
          Telephone: (503) 452-5858

11        Facsimile: (503) 345-6893
          www.BowersoxLaw.com

12        jeffrey@bowersoxlaw.com

13        Trial Attorney for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 39 – AMENDED COMPLAINT - Product Liability; Negligence;Adulterated Food Product; Breach of Warranties;  Misrepresentation; Unlawful Trade Practice

**BOWERSOX LAW FIRM, P.C.**
385 1ˢᵗ St., Suite 215
Lake Oswego, OR 97034
(503) 452-5858     (800) 255-1996
Jeffrey@BowersoxLaw.com

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

LUKE WESLEY PEARSON,

            Plaintiff,

      vs.

DAILY HARVEST, INC, a foreign Corporation,
SECOND BITE FOODS, INC., d/b/a "STONE
GATE FOODS", a foreign Corporation; and
SMIRK'S LTD, a foreign Corporation,

            Defendant.

_____/

Case No. **22CV21637**

CERTIFICATE OF SERVICE

STATE OF DELAWARE
County of New Castle            ss.

I, Sharlene Brooks, hereby certify that I am a competent person 18 years of age or older, a resident of the State of Delaware and that I am not a party to nor an attorney for any party in the within named action; that I made service of a true copy of:

*Summons and Amended Complaint*

CORPORATE SERVICE - Pursuant to ORCP 7D(3):

Upon **DAILY HARVEST INC.**, by personal service upon Lynnanne Gares, who is a clerk on duty in the office of the Registered Agent, Corporation Service Company, 251 Little Falls Dr.,Wilmington, DE 19808 on September 23, 2022 at 4:05 PM.

I declare under the penalty of perjury that the above statement is true and correct.

Dated this ___24___ day of ___September___,20 _22_

x _Sharlene Brooks_
Sharlene Brooks
Nationwide Process Service, Inc.
315 W Mill Plain Blvd, Ste. 206
Vancouver, WA 98660
503-241-0636

*359847*

Exhibit A, Page 78 of 78

1

2

3

4

5          IN THE CIRCUIT COURT OF THE STATE OF OREGON

6              FOR THE COUNTY OF MULTNOMAH

7    LUKE WESLEY PEARSON,                    )   Case No.  22CV21637
                                             )
8                      Plaintiff,            )   **DEFENDANT SMIRK'S LTD.'S**
                                             )   **NOTICE TO STATE COURT OF**
9        v.                                  )   **REMOVAL OF ACTION UNDER**
                                             )   **28 U.S.C. §§ 1332,**
10   DAILY HARVEST, INC., a foreign          )   **1441, AND 1446 (DIVERSITY OF**
     corporation; SECOND BITE FOODS, INC.,   )   **CITIZENSHIP)**
11   d/b/a "STONE GATE FOODS", a foreign     )
     corporation; and SMIRK'S LTD, a foreign )
12   corporation,                            )
                                             )
13                     Defendants.           )
     _____    )

14

15   **TO:    CLERK OF THE ABOVE-ENTITLED COURT**

16          Pursuant to 28 U.S.C. § 1446(d), Defendant Smirk's Ltd hereby provides notice to this

17   Court that on this day, October __, 2021, it removed this matter to the United States District

18   Court for the District of Oregon, Portland Division, pursuant to 28 U.S.C. §§ 1332, 1441, and

19   1446 (diversity of citizenship).

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

Page 1  **DEFENDANT SMIRK'S LTD.'S NOTICE TO STATE COURT**         DAVIS ROTHWELL
        **OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332,**      EARLE & XÓCHIHUA, P.C.
        **1441, AND 1446 (DIVERSITY OF CITIZENSHIP)**          200 SW MARKET ST, SUITE 1800
                                                               PORTLAND, OREGON  97201
                                                          T (503) 222-4422   F (503) 222-4428

1          A file-stamped copy of the Notice of Removal and accompanying exhibits is marked as

2   Exhibit 1 and attached hereto (excluding Exhibit A, which is a copy of the state court file, and

3   Exhibit B, which is a copy of this Notice).

4
           DATED this 14th day of October, 2022.
5
                                                    DAVIS ROTHWELL
6                                                   EARLE & XÓCHIHUA, P.C.

7

8                                                   _____
                                                    Christopher J. Drotzmann, OSB No. 962636
9                                                   cdrotzmann@davisrothwell.com
                                                    Nicholas V. Beyer, OSB No. 193304
10                                                  nbeyer@davisrothwell.com
                                                    Of Attorneys for Smirk's Ltd
11
                                                    Trial Attorney:  Christopher J. Drotzmann
12                                                                   OSB No. 962636

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 2   **DEFENDANT SMIRK'S LTD.'S NOTICE TO STATE COURT**          DAVIS ROTHWELL
         **OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332,**          EARLE & XÓCHIHUA, P.C.
         **1441, AND 1446 (DIVERSITY OF CITIZENSHIP)**             200 SW MARKET ST, SUITE 1800
                                                                    PORTLAND, OREGON  97201
                                                                T (503) 222-4422   F (503) 222-4428

1           **CERTIFICATE OF SERVICE**

2          I hereby certify that I served the foregoing **DEFENDANT SMIRK'S LTD.'S NOTICE TO STATE COURT OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332,**

3    **1441, AND 1446 (DIVERSITY OF CITIZENSHIP)** on the following attorney(s) of record:

| |
|---|
| 4   Mr. Jeffrey A. Bowersox, OSB No. 814422 |
|      Bowersox Law Firm, P.C. |
| 5   385 1st Street, Suite 215 |
|      Lake Oswego, OR 97034 |
| 6   Telephone:  503/452-5858 |
|      Facsimile:  503/345-6893 |
| 7   Email:  Jeffrey@bowersoxlaw.com |
|           *Of Attorneys for Plaintiff* |

8

9    by mailing to the foregoing a true copy thereof, placed in a sealed envelope, with postage

10   prepaid, addressed as listed above, and depositing the same in the United States mail through a

11   post office at Portland, Oregon, on this day***, and by e-filing and service through the Oregon e-***

12   ***court file and serve system if registered as a service contact***.

13          DATED this 14th day of October, 2022.

14                              DAVIS ROTHWELL
                                EARLE & XÓCHIHUA, P.C.
15

16                              *[signature]*

17                              Christopher J. Drotzmann, OSB No. 962636
                                cdrotzmann@davisrothwell.com
18                              Nicholas Beyer, OSB No. 193304
                                nbeyer@davisrothwell.com
19                              Of Attorneys for Smirk's Ltd

20

21

22

23

24

25

Page 1    **CERTIFICATE OF SERVICE**

DAVIS ROTHWELL
EARLE & XÓCHIHUA, P.C.
200 SW MARKET ST, SUITE 1800
PORTLAND, OREGON  97201
T (503) 222-4422   F (503) 222-4428

Exhibit B, Page 3 of 3

**E-Filed**

Colorado Secretary of State
Date and Time: 10/04/2007 02:34 PM
Id Number: 20071458259

Document number: 20071458259

Document processing fee
  If document is filed on paper                    $125.00
  If document is filed electronically           **$ 25.00**
Fees & forms/cover sheets
  are subject to change.
To file electronically, access instructions
  for this form/cover sheet and other
  information or print copies of filed
  documents, visit www.sos.state.co.us
  and select Business Center.
Paper documents must be typewritten or machine printed.

ABOVE SPACE FOR OFFICE USE ONLY

# Articles of Organization

filed pursuant to §7-90-301, et seq. and §7-80-204 of the Colorado Revised Statutes (C.R.S)

1. Entity name:

**Smirk's ltd.**

*(The name of a limited liability company must contain the term or abbreviation "limited liability company", "ltd. liability company", "limited liability co.", "ltd. liability co.", "limited", "llc", "l.l.c.", or "ltd." §7-90-601, C.R.S.)*

2. Use of Restricted Words *(if any of these terms are contained in an entity name, true name of an entity, trade name or trademark stated in this document, mark the applicable box):*

☐ "bank" or "trust" or any derivative thereof
☐ "credit union"     ☐ "savings and loan"
☐ "insurance", "casualty", "mutual", or "surety"

3. Principal office street address:

113 Ensign St
*(Street name and number)*

Fort Morgan                 CO    80701
*(City)*                          *(State)*   *(Postal/Zip Code)*
                                         United States
*(Province – if applicable)*      *(Country – if not US)*

4. Principal office mailing address
   (if different from above):

*(Street name and number or Post Office Box information)*

*(City)*              *(State)*      *(Postal/Zip Code)*

*(Province – if applicable)*      *(Country – if not US)*

5. Registered agent name  (if an individual): _____ _____ _____ _____
                                               *(Last)*        *(First)*        *(Middle)*     *(Suffix)*

**OR** (if a business organization): Erker Grain Company

6. The person identified above as registered agent has consented to being so appointed.

7. Registered agent street address:

113 Ensign St
*(Street name and number)*

Fort Morgan                 CO    80701
*(City)*                          *(State)*   *(Postal/Zip Code)*

Exhibit C, Page 1 of 3

8. Registered agent mailing address
   (if different from above):

_____
*(Street name and number or Post Office Box information)*

_____

_____  _____  _____
         *(City)*                    *(State)*        *(Postal/Zip Code)*

_____  _____
  *(Province – if applicable)*        *(Country – if not US)*

9. Name(s) and mailing address(es)
   of person(s) forming the limited
   liability company:

                    (if an individual) _____ _____ _____ ____
                                      *(Last)*          *(First)*       *(Middle)*   *(Suffix)*

**OR** (if a business organization)   Erker Grain Company
                                                  113 Ensign St
                                              *(Street name and number or Post Office Box information)*

                                         Fort Morgan          CO   80701
                                        *(City)*           *(State)*   *(Postal/Zip Code)*
                                               United States
                             *(Province – if applicable)*        *(Country – if not US)*

                    (if an individual) _____ _____ _____ ____
                                      *(Last)*          *(First)*       *(Middle)*   *(Suffix)*

**OR** (if a business organization) _____

_____
*(Street name and number or Post Office Box information)*

_____  _____  _____
         *(City)*                    *(State)*        *(Postal/Zip Code)*
                                          United States
  *(Province – if applicable)*        *(Country – if not US)*

                    (if an individual) _____ _____ _____ ____
                                      *(Last)*          *(First)*       *(Middle)*   *(Suffix)*

**OR** (if a business organization) _____

_____
*(Street name and number or Post Office Box information)*

_____  _____  _____
         *(City)*                    *(State)*        *(Postal/Zip Code)*
                                          United States
  *(Province – if applicable)*        *(Country – if not US)*

*(If more than three persons are forming the limited liability company, mark this box ☐ and include an attachment stating the true names and mailing addresses of all additional persons forming the limited liability company)*

10. The management of the limited liability company is vested in managers ☑
     **OR** is vested in the members ☐

11. There is at least one member of the limited liability company.

12. *(Optional)* Delayed effective date: _____.

*(mm/dd/yyyy)*

13. Additional information may be included pursuant to other organic statutes such as title 12, C.R.S.  If applicable, mark this box ☐ and include an attachment stating the additional information.

Notice:

Causing this document to be delivered to the secretary of state for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the individual's act and deed, or that the individual in good faith believes the document is the act and deed of the person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic statutes, and that the individual in good faith believes the facts stated in the document are true and the document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the secretary of state, whether or not such individual is named in the document as one who has caused it to be delivered.

14. Name(s) and address(es) of the individual(s) causing the document to be delivered for filing:

| Erker | Nicholas | | |
|---|---|---|---|
| *(Last)* | *(First)* | *(Middle)* | *(Suffix)* |

113 Ensign St

*(Street name and number or Post Office Box information)*

| Fort Morgan | CO | 80701 |
|---|---|---|
| *(City)* | *(State)* | *(Postal/Zip Code)* |

| | United States | |
|---|---|---|
| *(Province – if applicable)* | *(Country – if not US)* | |

*(The document need not state the true name and address of more than one individual.  However, if you wish to state the name and address of any additional individuals causing the document to be delivered for filing, mark this box ☐ and include an attachment stating the name and address of such individuals.)*

**Disclaimer:**

This form, and any related instructions, are not intended to provide legal, business or tax advice, and are offered as a public service without representation or warranty.  While this form is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form.  Questions should be addressed to the user's attorney.

The Securities and Exchange Commission has not necessarily reviewed the information in this filing and has not determined if it is accurate and complete.
The reader should not assume that the information is accurate and complete.

### UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549
### FORM D

#### Notice of Exempt Offering of Securities

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0076 |
| Estimated average burden hours per response: | 4.00 |

---

### 1. Issuer's Identity

| CIK (Filer ID Number) | Previous Names | [X] None | Entity Type |
|---|---|---|---|

CIK (Filer ID Number)

0001667362

Name of Issuer

Daily Harvest, Inc.

Jurisdiction of Incorporation/Organization

DELAWARE

Year of Incorporation/Organization

[X] Over Five Years Ago

[ ] Within Last Five Years (Specify Year)

[ ] Yet to Be Formed

Entity Type

[X] Corporation

[ ] Limited Partnership

[ ] Limited Liability Company

[ ] General Partnership

[ ] Business Trust

[ ] Other (Specify)

---

### 2. Principal Place of Business and Contact Information

Name of Issuer

Daily Harvest, Inc.

| Street Address 1 | Street Address 2 |
|---|---|
| 99 HUDSON STREET, 11TH FLOOR | |

| City | State/Province/Country | ZIP/PostalCode | Phone Number of Issuer |
|---|---|---|---|
| NEW YORK | NEW YORK | 10013 | 18883020305 |

---

### 3. Related Persons

| Last Name | First Name | Middle Name |
|---|---|---|
| Drori | Rachel | |

| Street Address 1 | Street Address 2 |
|---|---|
| 99 Hudson Street, 11th Floor | |

| City | State/Province/Country | ZIP/PostalCode |
|---|---|---|
| New York | NEW YORK | 10013 |

Relationship: [X] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

---

| Last Name | First Name | Middle Name |
|---|---|---|
| Taussig | Alexander | |

| Street Address 1 | Street Address 2 |
|---|---|

Exhibit D, Page 1 of 6

99 Hudson Street, 11th Floor

| City | State/Province/Country | ZIP/PostalCode |
|------|------------------------|----------------|
| New York | NEW YORK | 10013 |

Relationship: ☐ Executive Officer ☒ Director ☐ Promoter

Clarification of Response (if Necessary):

---

| Last Name | First Name | Middle Name |
|-----------|-----------|-------------|
| Stenmark | Carle | |
| Street Address 1 | Street Address 2 | |
| 99 Hudson Street, 11th Floor | | |
| City | State/Province/Country | ZIP/PostalCode |
| New York | NEW YORK | 10013 |

Relationship: ☐ Executive Officer ☒ Director ☐ Promoter

Clarification of Response (if Necessary):

---

| Last Name | First Name | Middle Name |
|-----------|-----------|-------------|
| Robling | Sally | Genster |
| Street Address 1 | Street Address 2 | |
| 99 Hudson Street, 11th Floor | | |
| City | State/Province/Country | ZIP/PostalCode |
| New York | NEW YORK | 10013 |

Relationship: ☐ Executive Officer ☒ Director ☐ Promoter

Clarification of Response (if Necessary):

---

| Last Name | First Name | Middle Name |
|-----------|-----------|-------------|
| Dillon | Mary | |
| Street Address 1 | Street Address 2 | |
| 99 Hudson Street, 11th Floor | | |
| City | State/Province/Country | ZIP/PostalCode |
| New York | NEW YORK | 10013 |

Relationship: ☐ Executive Officer ☒ Director ☐ Promoter

Clarification of Response (if Necessary):

---

| Last Name | First Name | Middle Name |
|-----------|-----------|-------------|
| Weiler | Matt | |
| Street Address 1 | Street Address 2 | |
| 99 Hudson Street, 11th Floor | | |
| City | State/Province/Country | ZIP/PostalCode |
| New York | NEW YORK | 10013 |

Relationship: ☒ Executive Officer ☐ Director ☐ Promoter

Clarification of Response (if Necessary):

---

## 4. Industry Group

☐ Agriculture                    Health Care          ☐ Retailing

Exhibit D, Page 2 of 6

Banking & Financial Services

☐ Commercial Banking

☐ Insurance

☐ Investing

☐ Investment Banking

☐ Pooled Investment Fund

Is the issuer registered as an investment company under the Investment Company Act of 1940?

☐ Yes          ☐ No

☐ Other Banking & Financial Services

☐ Business Services

Energy

☐ Coal Mining

☐ Electric Utilities

☐ Energy Conservation

☐ Environmental Services

☐ Oil & Gas

☐ Other Energy

☐ Biotechnology

☐ Health Insurance

☐ Hospitals & Physicians

☐ Pharmaceuticals

☐ Other Health Care

☐ Manufacturing

Real Estate

☐ Commercial

☐ Construction

☐ REITS & Finance

☐ Residential

☐ Other Real Estate

☐ Restaurants

Technology

☐ Computers

☐ Telecommunications

☐ Other Technology

Travel

☐ Airlines & Airports

☐ Lodging & Conventions

☐ Tourism & Travel Services

☐ Other Travel

☒ Other

## 5. Issuer Size

| Revenue Range | OR | Aggregate Net Asset Value Range |
|---|---|---|
| ☐ No Revenues | | ☐ No Aggregate Net Asset Value |
| ☐ $1 - $1,000,000 | | ☐ $1 - $5,000,000 |
| ☐ $1,000,001 - $5,000,000 | | ☐ $5,000,001 - $25,000,000 |
| ☐ $5,000,001 - $25,000,000 | | ☐ $25,000,001 - $50,000,000 |
| ☐ $25,000,001 - $100,000,000 | | ☐ $50,000,001 - $100,000,000 |
| ☐ Over $100,000,000 | | ☐ Over $100,000,000 |
| ☒ Decline to Disclose | | ☐ Decline to Disclose |
| ☐ Not Applicable | | ☐ Not Applicable |

## 6. Federal Exemption(s) and Exclusion(s) Claimed (select all that apply)

☐ Rule 504(b)(1) (not (i), (ii) or (iii))

☐ Rule 504 (b)(1)(i)

☐ Rule 504 (b)(1)(ii)

☐ Rule 504 (b)(1)(iii)

☒ Rule 506(b)

☐ Investment Company Act Section 3(c)

☐ Section 3(c)(1)          ☐ Section 3(c)(9)

☐ Section 3(c)(2)          ☐ Section 3(c)(10)

☐ Section 3(c)(3)          ☐ Section 3(c)(11)

Exhibit D, Page 3 of 6

- [ ] Rule 506(c)
- [ ] Securities Act Section 4(a)(5)

- [ ] Section 3(c)(4)
- [ ] Section 3(c)(5)
- [ ] Section 3(c)(6)
- [ ] Section 3(c)(7)

- [ ] Section 3(c)(12)
- [ ] Section 3(c)(13)
- [ ] Section 3(c)(14)

---

## 7. Type of Filing

- [X] New Notice   Date of First Sale 2021-11-10  [ ] First Sale Yet to Occur
- [ ] Amendment

---

## 8. Duration of Offering

Does the Issuer intend this offering to last more than one year?  [ ] Yes [X] No

---

## 9. Type(s) of Securities Offered (select all that apply)

- [X] Equity
- [ ] Debt
- [ ] Option, Warrant or Other Right to Acquire Another Security
- [ ] Security to be Acquired Upon Exercise of Option, Warrant or Other Right to Acquire Security

- [ ] Pooled Investment Fund Interests
- [ ] Tenant-in-Common Securities
- [ ] Mineral Property Securities
- [ ] Other (describe)

---

## 10. Business Combination Transaction

Is this offering being made in connection with a business combination transaction, such as a merger, acquisition or exchange offer?  [ ] Yes [X] No

Clarification of Response (if Necessary):

---

## 11. Minimum Investment

Minimum investment accepted from any outside investor $0 USD

---

## 12. Sales Compensation

Recipient

(Associated) Broker or Dealer [X] None

Street Address 1

City

Recipient CRD Number [X] None

(Associated) Broker or Dealer CRD Number                [X] None

Street Address 2

State/Province/Country                                            ZIP/Postal Code

State(s) of Solicitation (select all that apply)
Check "All States" or check individual States

[ ] All States  [ ] Foreign/non-US

---

## 13. Offering and Sales Amounts

| | | |
|---|---|---|
| Total Offering Amount | $99,999,993 USD | or [ ] Indefinite |
| Total Amount Sold | $76,999,930 USD | |
| Total Remaining to be Sold | $23,000,063 USD | or [ ] Indefinite |

Exhibit D, Page 4 of 6

Clarification of Response (if Necessary):

---

### 14. Investors

☐ Select if securities in the offering have been or may be sold to persons who do not qualify as accredited investors, and enter the number of such non-accredited investors who already have invested in the offering.

Regardless of whether securities in the offering have been or may be sold to persons who do not qualify as accredited investors, enter the total number of investors who already have invested in the offering: [6]

---

### 15. Sales Commissions & Finder's Fees Expenses

Provide separately the amounts of sales commissions and finders fees expenses, if any. If the amount of an expenditure is not known, provide an estimate and check the box next to the amount.

Sales Commissions $0 USD ☐ Estimate

Finders' Fees $0 USD ☐ Estimate

Clarification of Response (if Necessary):

---

### 16. Use of Proceeds

Provide the amount of the gross proceeds of the offering that has been or is proposed to be used for payments to any of the persons required to be named as executive officers, directors or promoters in response to Item 3 above. If the amount is unknown, provide an estimate and check the box next to the amount.

$0 USD ☐ Estimate

Clarification of Response (if Necessary):

---

### Signature and Submission

**Please verify the information you have entered and review the Terms of Submission below before signing and clicking SUBMIT below to file this notice.**

**Terms of Submission**

In submitting this notice, each issuer named above is:

- Notifying the SEC and/or each State in which this notice is filed of the offering of securities described and undertaking to furnish them, upon written request, in the accordance with applicable law, the information furnished to offerees.*

- Irrevocably appointing each of the Secretary of the SEC and, the Securities Administrator or other legally designated officer of the State in which the issuer maintains its principal place of business and any State in which this notice is filed, as its agents for service of process, and agreeing that these persons may accept service on its behalf, of any notice, process or pleading, and further agreeing that such service may be made by registered or certified mail, in any Federal or state action, administrative proceeding, or arbitration brought against the issuer in any place subject to the jurisdiction of the United States, if the action, proceeding or arbitration (a) arises out of any activity in connection with the offering of securities that is the subject of this notice, and (b) is founded, directly or indirectly, upon the provisions of:  (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these statutes, or (ii) the laws of the State in which the issuer maintains its principal place of business or any State in which this notice is filed.

- Certifying that, if the issuer is claiming a Regulation D exemption for the offering, the issuer is not disqualified from relying on Rule 504 or Rule 506 for one of the reasons stated in Rule 504(b)(3) or Rule 506(d).

Each Issuer identified above has read this notice, knows the contents to be true, and has duly caused this notice to be signed on its behalf by the undersigned duly authorized person.

Exhibit D, Page 5 of 6

For signature, type in the signer's name or other letters or characters adopted or authorized as the signer's signature.

| Issuer | Signature | Name of Signer | Title | Date |
|--------|-----------|----------------|-------|------|
| Daily Harvest, Inc. | /s/ Rachel Drori | Rachel Drori | President and CEO | 2021-11-22 |

*Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.*

* This undertaking does not affect any limits Section 102(a) of the National Securities Markets Improvement Act of 1996 ("NSMIA") [Pub. L. No. 104-290, 110 Stat. 3416 (Oct. 11, 1996)] imposes on the ability of States to require information. As a result, if the securities that are the subject of this Form D are "covered securities" for purposes of NSMIA, whether in all instances or due to the nature of the offering that is the subject of this Form D, States cannot routinely require offering materials under this undertaking or otherwise and can require offering materials only to the extent NSMIA permits them to do so under NSMIA's preservation of their anti-fraud authority.



## State of Minnesota

# SECRETARY OF STATE

CERTIFICATE OF INCORPORATION

I, Mark Ritchie, Secretary of State of Minnesota, do certify that: Articles of Incorporation, duly signed and acknowledged under oath, have been filed on this date in the Office of the Secretary of State, for the incorporation of the following corporation, under and in accordance with the provisions of the chapter of Minnesota Statutes listed below.

This corporation is now legally organized under the laws of Minnesota.

Corporate Name: Second Bite Foods, Inc.

Corporate Charter Number: 3995821-2

Chapter Formed Under: 302A

This certificate has been issued on 09/24/2010.



*Mark Ritchie*
Secretary of State.



Dc or

## ARTICLES OF INCORPORATION
## OF
## SECOND BITE FOODS, INC.

The undersigned incorporator, being a natural person 18 years of age or older, in order to form a corporate entity under Minnesota Statutes § 302A, hereby adopts the following Articles of Incorporation:

### ARTICLE I. NAME

The name of this corporation shall be: Second Bite Foods, Inc.

### ARTICLE II.  REGISTERED OFFICE

The registered office of this corporation shall be: 5365 Shore Trail, Prior Lake, MN 55372

### ARTICLE III.  PURPOSE AND POWERS

The Corporation is organized for general business purposes, with unlimited power to engage in any lawful and all lawful business for which a corporation may be organized under the provisions of Minnesota Statutes, Chapter 302A, and to do any and all things reasonably necessary or incidental to accomplish such purposes.

### ARTICLE IV.  DURATION

The duration of this Corporation is perpetual.

### ARTICLE V.  AUTHORIZED SHARES

The corporation is authorized to issue an aggregate total of Two Hundred Thousand (200,000) Common Shares having a par value of $.01 per share.  The Board may establish multiple classes and series of shares.

### ARTICLE VI.  NO PREEMPTIVE RIGHTS

Shareholders shall have no preemptive rights with respect to the shares of the Corporation.

## ARTICLE VII.  NO CUMULATIVE VOTING

Shareholders within a class shall not be entitled to cumulate their votes for the election of directors.

## ARTICLE VIII.  BOARD OF DIRECTORS

The business of the Corporation shall be managed by a Board of Directors consisting of not less than one (1) Director and nor more than five (5) Directors, subject to increase or decrease in the number of Directors to the Bylaws of this Corporation.

## ARTICLE IX.  BYLAWS

The Board of Directors may from time to time by a vote of a majority of its Directors, make, adopt, alter, amend, or rescind all or any of the Bylaws of the Corporation, subject to the power of the Shareholders of the Corporation, as prescribed by Minnesota Statutes, Chapter 302A, to change or repeal such Bylaws.

## ARTICLE X.  WRITTEN ACTIONS

Unless approval by the Shareholders of this Corporation is required, action by the Board of Directors of this Corporation may be taken by written action signed by the number of Directors that would be required to take the same action at a meeting of the Board of Directors of this Corporation at which all Directors were present.

## ARTICLE XI.  DIRECTOR LIABILITY

A Director of the Corporation shall not be personally liable to the Corporation or its Shareholders for monetary damages for breach of fiduciary duty as a Director, except for (i) liability based on a breach of the duty of loyalty to the Corporation or the Shareholders; (ii) liability for acts or omissions not in good faith or that involved intentional misconduct or knowing violation of law; (iii) liability based on the payment of an improper dividend or an improper repurchase of the Corporation's stock under § 559 of the Minnesota Business Corporation Act (Minn. Stat. Chapter 302A) or in violation of federal or state security laws; (iv) liability for any transaction from which the Director derived an improper personal benefit; or (v) liability for any act or omission occurring prior to the date of this article becomes effective.  If Minnesota law is amended or otherwise modified to authorize the further elimination or limitation of the liability of Directors, then the liability of the directors of the Corporation, in addition to the limitation of personal liability provided herein, shall be limited to the fullest extent permitted by such amended or otherwise modified Minnesota law.

## ARTICLE XII.  AMENDMENT OF ARTICLES OF INCORPORATION

These Articles of Incorporation may be amended at any meeting of the Corporation's Shareholders by an affirmative vote of the holders of a majority of the voting power of the shares entitled to vote; provided, however, that in the event the Corporation has not yet issues shares of stock, these Articles of Incorporation may be amended by the incorporator or the Board of Directors.

## ARTICLE XIII.  INCORPORATOR

The name and address of the incorporator is:  William L. Bernard, Grannis & Hauge, P.A., 1260 Yankee Doodle Road, Suite 200, Eagan, Minnesota 55121.

IN WITNESS WHEREOF, the incorporator has signed these Articles of Incorporation on the date set forth below.

Dated: _Sept. 24, 2010_

Signed: _____
William L. Bernard, Esq.
Grannis & Hauge, P.A.

STATE OF MINNESOTA    )
                       ) ss.
COUNTY OF DAKOTA       )

The foregoing instrument was acknowledged before me this 24 day of September, 2010.

_____
Notary Public

SHELLY M. BRUBER
Notary Public-Minnesota
My Commission Expires Jan 31, 2015

STATE OF MINNESOTA
DEPARTMENT OF STATE
FILED

SEP 2 4 2010

Mark Ritchie
Secretary of State

Exhibit E, Page 4 of 4